## Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant, *v.* Randy Guarino, Appellee.

Argued March 7, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*John L. Heaton,* Assistant Attorney General, with him *Anthony J. Maiorana,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

No appearance for appellee.

OPINION BY JUDGE MENCER, May 16, 1975:

On January 18, 1974, in the Borough of Indiana, Randy Guarino (Guarino) was stopped by a borough policeman after making a sharp U-turn immediately in

front of the policeman's vehicle. Upon approaching Guarino's vehicle, the policeman detected the odor of alcoholic beverages on Guarino's breath. Guarino was asked to get out of his car and thereafter he "weaved back and forth" when he walked.

Guarino was placed under arrest and asked to submit to a breathalyzer test as provided in the so-called "Implied Consent Law," Section 624.1(a) of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* 75 P.S. §624.1(a).[1] Guarino did not answer the question and was reasked the question "a couple times" at the scene of the arrest but he continued to stand mute.

Guarino was transported to a magistrate's office and again asked to submit to a breathalyzer test but he again made no response. The equipment necessary for administering a breathalyzer test was located approximately three miles from the magistrate's office at the Indiana Barracks of the Pennsylvania State Police. The magistrate and policeman signed a report form indicating that Guarino

---

1. This section provides, *inter alia*: "Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons."

had refused to submit to a breathalyzer test. Upon receipt of this report form, the Secretary of Transportation, under Section 624.1 (a), suspended Guarino's operator's license for a period of six months. Guarino appealed from this suspension to the Court of Common Pleas of Somerset County which, after a de novo hearing, sustained the appeal and vacated the Secretary of Transportation's suspension order. This appeal by the Commonwealth followed and we affirm.

If, in fact, an operator of a motor vehicle is (1) placed under arrest and (2) charged with the operation of a motor vehicle while under the influence of intoxicating liquor and (3) requested to submit to a breathalyzer test and (4) if he refuses to do so, the Secretary of Transportation may suspend that operator's license to operate a motor vehicle *Commonwealth v. Miles,* 8 Pa. Commonwealth Ct. 544, 304 A.2d 704 (1973). Here Guarino does not dispute this statement of the law but does contend that his silence in response to the policeman's inquiry relative to submitting to a breathalyzer test did not constitute a refusal to do so.

We deem this a significant case and are not unmindful of the following observations we made in *Commonwealth v. Gallagher,* 3 Pa. Commonwealth Ct. 371, 374, 283 A.2d 508, 509-10 (1971) :

"Section 624.1 was added to The Vehicle Code at the Legislative Session of 1961. In its original form, it provided that the operator might be given a breath test if he consented thereto. By amendment approved December 22, 1969, P.L. 392, there were introduced the concept of assumed consent to the chemical breath test, the provision for suspension of operator's privileges for refusal and the admissibility in criminal proceedings of the fact of such refusal. As first enacted, Section 624.1 required consent to testing. By amendment, consent was supplied by law and refusal became admissible as evidence of guilt. As a deterrent

to refusal, the recusant's driving privileges were made subject to suspension on this ground.

"The automobile has bestowed great material, intellectual and social benefits. By the agency of the bad driver, it has also visited upon a substantial minority of persons disasters of Apocalyptic dimensions. At the forefront of the instruments of destruction has been the drunken driver. Section 624.1 and its precursors from other jurisdictions were intended to supply scientific, physiological proof of the presence or absence of the influence of intoxicants, as a substitute for or supplement to the observations of eyewitnesses, uncertain when made and usually required to be recalled long after the event. Furthermore, the jury could thus be provided with means of accounting for aberrant behavior otherwise than as symptomatic of the inevitable blow on the head."

Also, we subscribe to the practical test for determining a refusal adopted by the Superior Court in *Morris Motor Vehicle Operator License Case,* 218 Pa. Superior Ct. 347, 350, 280 A. 2d 658, 659-60 (1971):

" 'Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and physiological processes tend to eliminate evidence of ingested alcohol in the system, *it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.* . . . The occasion is not one for debate, maneuver or negotiation, but rather a simple "yes" or "no" to the officer's request.' " (Emphasis in original.)

The question confronting us here is the result of the policeman's failure to transport Guarino to the site of the necessary equipment for administering a breathalyzer test and there to request him to submit to the test. As the lower court noted, "[t]here is no evidence in this

record that would convince this Court that [Guarino] would have refused the breathalyzer test if the officer had taken him to the State Police Barracks where the machine was located."

We appreciate the argument advanced by the Commonwealth that in the face of the events that had transpired, doing what the court below suggested would have been a useless and unnecessary thing since Guarino's silence would likely have been repeated at the State Police barracks and, in any event, his silence in response to questions at the scene of the arrest and subsequently at the magistrate's office was tantamount to a refusal. We cannot accept such a theory of probability as to what Guarino would have done if taken to the breathalyzer equipment nor can we accept his silence at the scene of arrest and the magistrate's office as a refusal in futuro.

The Commonwealth contends that the element of inconvenience is involved here since, under the lower court's premise, Guarino would have had to be transported from the magistrate's office to the State Police barracks with an expenditure of time and police power, although the prospect of any fruitful accomplishment was most unlikely. Admittedly, such a result might have occurred, but the inconvenience would have been no greater than that which would have followed had Guarino consented to take the test.

We conclude, as did the lower court, that "[h]ad these officers, in the face of [Guarino's] silence, prepared the breathalyzer and [Guarino] for the test and had the silent [Guarino] then rebuffed their efforts to administer the test to him, we would have no trouble sustaining the action of the Secretary of Transportation. . . ." Such a conclusion would find support in and be entirely consistent with the rationale of *Commonwealth v. Gallagher, supra,* and *Morris Motor Vehicle Operator License Case, supra.*

Order affirmed.