Richard M. Abate, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Submitted on briefs, June 6, 1980, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Basil G. Russin*, with him *Joseph F. Sklarosky*, for appellant.

*Harold H. Cramer*, Assistant Attorney General, with him *Ward T. Williams*, Chief Counsel, and *Harvey Bartel III*, Acting Attorney General, for appellee.

OPINION BY JUDGE CRAIG, July 18, 1980:

Richard M. Abate seeks review of the order of the Court of Common Pleas of Luzerne County dismissing his appeal from the Secretary of Transportation's suspension of his driver's license under Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547, on the ground that Abate refused to submit to a breathalyzer test.

Abate contends that the lower court erred in concluding that he had in fact refused to submit to the breathalyzer. We agree, because the record does not support that conclusion, as it must for us to affirm. *McMahon v. Commonwealth*, 39 Pa. Commonwealth Ct. 260, 263, 395 A.2d 318, 320 (1978).

Abate was stopped by officers of the Plymouth Township and Plymouth Borough police departments at 2:40 a.m. on February 18, 1979. At the scene, after arresting Abate for driving under the influence, Officer Jesso of the borough police requested that he submit to a breathalyzer test; Abate agreed to do so. Abate was then taken to the borough station, where a scuffle occurred while Officer Jesso was searching him.[1] After Abate was subdued by another policeman, Officer Jesso said "We're going to the barracks now," to which Abate replied, "No, I'm not." Officer Jesso stated that due to Abate's "coherence",[2] he was not processed at that time, but was placed in a cell until a morning arraignment before a magistrate.

The record unequivocally establishes that Abate consented to the test when asked at the scene of his arrest. He further testified, without contradiction, that he had no knowledge as to the location of the testing apparatus, that the subject of the test was never brought up aside from the initial request at the time of his arrest, and that he was at all times willing and able to undergo the test.

Our scrutiny of the record produces nothing to support the lower court's conclusion, that Abate "was informed that he would be taken to the Pennsylvania State Police Barracks *for the breathalyzer test*" (emphasis ours); the record reveals the only comment regarding the barracks to be that already quoted from which the purpose of the move was notably absent.[3]

---

[1] The record indicates that this scuffle was the subject of independent assault charges against Abate.

[2] The transcript reads "coherence", but we must conclude that the witness meant "incoherence" or lack of coherence.

[3] The officer testified, on direct examination, as follows:
    Q. Then what happened?
    ....

A somewhat similar situation was before us in *Department of Transportation, Bureau of Traffic Safety v. Guarino,* 19 Pa. Commonwealth Ct. 104, 339 A.2d 861 (1975). There the arrested driver was requested, at the scene and again before a magistrate, to submit to the test; the driver remained silent at both junctures. As in this case, the test apparatus was located at a state police barracks a short distance away. We there rejected the argument that, in light of those events, transporting Guarino to the site of the apparatus would have been a useless and unnecessary thing, and we also rejected the proposition that his silence was tantamount to refusal.

Although Abate's negative response as to going to the barracks here is distinct from Guarino's silence, neither provides a proper evidentiary basis for a conclusion of refusal; Abate's reply was not within the context of any reference to the test. The circumstances do not justify an inference that Abate's literal response would have been the same had he been aware that the move to the barracks was for the purpose of the test.

We appreciate the lower court's concern with the alleged assault as demonstrating reprehensible hostility. However, this is not a case where a defendant can be charged with behaving specifically to frustrate administration of the test, as in *Department of Transportation, Bureau of Traffic Safety v. Medalis,* 24 Pa. Commonwealth Ct. 12, 354 A.2d 43 (1976), cited by

---

A. Then Mr. Abate—the other policeman came and subdued Mr. Abate. I said, 'we're going to the barracks now.' We did not process him. He said, 'No, I'm not.'
On cross-examination:
Q. After the scuffle was over, you then stated: 'We are going to the barracks;' is that accurate?
A. Right.
Q. And the defendant said: 'No, I'm not.'
A. Right.

the Commonwealth. That case involved a driver who orally consented to the test, and then, at the time and place of its administration, physically refused to exhale sufficient volumes. That physical refusal manifestly related to the test because it was in the context of its actual administration.

Accordingly, we must reverse the order appealed.

ORDER

AND NOW, this 18th day of July, 1980, the May 16, 1979 order of the Court of Common Pleas of Luzerne County, at No. 2939 of 1979, is reversed, and the appeal of Richard M. Abate is sustained.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

Of course, " '*anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal....*' ... (Emphasis added.)" *Morris Motor Vehicle Operator License Case*, 218 Pa. Superior Ct. 347, 350, 280 A.2d 658, 660 (1971).

Here, Abate *verbally* consented to take the test but, at the borough station, assaulted the officer and then *refused* to go to the State Police barracks where the test was to be administered. The police officer testified that, in light of the assault and Abate's refusal to go to the barracks, they did not process him.

Thus, I believe that Abate's *conduct or behavior* amounts to a *refusal* to take the test. In *Edmundson v. Commonwealth of Pennsylvania*, 38 Pa. Commonwealth Ct. 231, 233, 392 A.2d 902, 902 (1978), our court determined that "appellant's conduct at the police station following his arrest ... amounted to a

refusal to submit to the test. Appellant's actions demonstrated something much less than unequivocal assent."

Here, Abate knew that his license would be suspended if he did not submit to the test. His action in assaulting the police officer and his refusal to go to the barracks certainly forestalled the officers from administering the test. It seems to me that this action by Abate amounts to a refusal to take the test. A verbal assent, coupled with a refusal to go to the test site, amounts to a refusal. *See Department of Transportation, Bureau of Traffic Safety v. Medalis*, 24 Pa. Commonwealth Ct. 12, 15, 354 A.2d 43, 45 (1976) ("Medalis' behavior in failing to provide the necessary breath sample was tantamount to a refusal"); *Department of Transportation, Bureau of Traffic Safety v. Hanes*, 49 Pa. Commonwealth Ct. 407, 411 A.2d 571 (1980) (acquiescing to the test and then refusing to supply sufficient breath is tantamount to a refusal).

The majority would distinguish *Medalis* on the ground that here, the conduct or behavior was not specifically designed to "frustrate administration of the test." We do not know *why* Abate assaulted the officer or refused to go to the barracks, but it is just as speculative to assume that his actions were *not* designed to frustrate administration of the test as it would be to conclude that they *were* designed to frustrate administration of the test. We *do* know, however, that Abate's conduct, after he had consented to take the test, was incompatible with the administration of the test. This conduct, then, is enough to turn his verbal assent into a refusal in fact, under the rationale of *Medalis* and *Hanes*. I would affirm the lower court.