Anthony MILLILI, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 14, 1999.

Decided Jan. 31, 2000.

Stanton M. Lacks, Bensalem, for appellant.

Timothy P. Wile, Asst. Counsel In-Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

DOYLE, President Judge.

Anthony Millili appeals from an order of the Court of Common Pleas of Montgomery County which upheld the Department of Transportation's (DOT) suspension of his driver's license pursuant to Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1).[1] Also, before the Court is DOT's request for counsel fees under Pa. R.A.P. 2744 based upon Millili's purportedly frivolous appeal from the order of Common Pleas.

On December 25, 1997, at approximately 2:05 a.m., Millili was stopped by Sergeant John Cane of the Bridgeport Police Department after he observed Millili's car coming toward him with its lights off. Sergeant Cane first flashed his headlights to alert Millili that his lights were not on, but the car proceeded past him, and Sergeant Cane put on his emergency lights and eventually pulled the car over one-half mile further down the road. As Sergeant Cane approached, Millili did not roll down his window or even acknowledge Sergeant Cane after the officer banged on the passenger side window to get his attention. Sergeant Cane then walked around to the driver's side of the car, opened the door and shut the engine off "for my safety as well as his." At that point, he detected a strong odor of alcohol coming from Millili. As a result, Sergeant Cane asked Millili to perform several field sobriety tests, all of which Millili failed. Accordingly, Sergeant Cane placed Millili under arrest for DUI and asked him to submit to chemical testing, which Millili refused.

Thereafter, Sergeant Cane took Millili to the police station, read him DOT's Form DL–26, entitled "Chemical Testing Warning and Report of Refusal to Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code." Millili again

---

**1.** That section provides as follows:

 (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S. § 1547(b)(1).

refused to submit to chemical testing and refused to sign the form. Sergeant Cane reported Millili's actions as a refusal.

Based on that refusal, DOT suspended Millili's operator's license for one year, and Millili appealed that decision to the Court of Common Pleas of Montgomery County.

At the hearing before Common Pleas, Sergeant Cane testified to the above events. Specifically, he testified that, at the scene, he asked Millili to submit to a blood test and advised him that, if he refused, his license would be suspended for one year. Sergeant Cane testified that Millili refused to submit to the blood test.

In addition, Sergeant Cane testified that he read the form DL–26 to Millili at the police station and again gave Millili the opportunity to submit to a chemical test, but Millili refused to take a chemical test and refused to sign the form.

On cross-examination, Millili's attorney read into the record a portion of Sergeant Cane's testimony from Millili's preliminary hearing on the criminal charges before a district justice where Sergeant Cane testified that he did not offer Millili an opportunity at the police station to submit to chemical testing.[2] On redirect examination, Sergeant Cane reiterated that, at the police station, he gave Millili another chance to submit to chemical testing, again advising him of the consequences of refusing to submit to the test, and Millili again refused.

In response, Millili testified that he was **never** given an opportunity to submit to chemical testing at either the scene of arrest or at the police station. He stated

that, if he had been asked to submit to chemical testing, he would have done so.

In a November 6, 1998 opinion, the Common Pleas Court upheld DOT's suspension of Millili's license. The court concluded that DOT had demonstrated that Millili was asked to submit to chemical testing and refused to do so. The court then concluded that Millili did not offer evidence indicating that his refusal was not knowing or conscious. This appeal followed.

 On appeal,[3] Millili argues that Common Pleas erred by finding that he was asked to submit to chemical testing, but refused. Specifically, Millili argues as follows:

In the instant case, the Department of Transportation has not met its burden of proof as follows: Millili's version that there was no refusal is the only credible one and Sergeant Cane's version by his own admitted contradictory testimony simply cannot be given any weight.... Further, Sergeant Cane admitted on cross examination that he never showed Millili the DL–26 form nor read the warnings to him....

(Millili's Brief at 9.) At the outset, we note that it is settled law beyond question that determinations as to the credibility of witnesses and the weight assigned to their testimony is **solely** within the province of the fact finder, in this case the Court of Common Pleas. *See Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 248, 555 A.2d 873, 875 (1989) (stating that, "Questions of credibility and conflicts in the evidence presented are for the trial court to resolve,

---

**2.** Although Millili's attorney read an excerpt from the preliminary hearing into the record, the entire transcript was never offered and admitted into evidence. On appeal, Millili's attorney has included the entire transcript, a portion of which was never admitted as evidence in this case, in his reproduced record. The note accompanying Pa. R.A.P.1921 states that an appellate court may only consider those facts which have been duly certified in the record on appeal. Accordingly, we will

consider only those portions of Sergeant Cane's testimony read into the record below.

**3.** Our standard of review in this case is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law were committed, or whether the trial court committed an abuse of discretion in making its determination. *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996).

not our appellate courts"). In the present case, the Common Pleas Court received conflicting testimony concerning whether or not Millili was asked to submit to a chemical test, as well as whether he refused to take that test. Reconciling this conflict, the Common Pleas Court determined that Millili *had* been asked to submit to the test, but refused. Accordingly, we will not reverse that determination on appeal.

■ In addition, Millili asserts that, even if Sergeant Cane's testimony is accepted, Millili did not refuse to submit to chemical testing because he was not taken to the hospital where the test was administered. In support of this contention, Millili directs our attention to *Abate v. Department of Transportation*, 53 Pa.Cmwlth. 104, 416 A.2d 1159 (1980), and *Department of Transportation, Bureau of Traffic Safety v. Guarino*, 19 Pa.Cmwlth. 104, 339 A.2d 861 (1975).

In *Guarino*, the driver remained silent when asked to submit to a Breathalyzer at the scene and at the magistrate's office. The driver, however, was never taken to the location of the Breathalyzer. We affirmed the judgment of Common Pleas, concluding that there was no evidence that, if Guarino were taken to the place where the Breathalyzer apparatus was, he would have refused the test.

In *Abate*, the driver was arrested for DUI and was asked to submit to chemical testing, which he agreed initially to do. While he was at the police station, however, a scuffle broke out, and the officers told Abate that they were taking him to the State Police barracks. Abate was not told that he was being taken there for chemical testing, and he refused to go. As in *Guarino*, we concluded that there was no refusal because Abate was not told why he was being taken to the police barracks and, therefore, he did not refuse to submit to a test because he did not know that he was again being asked to take a chemical test.

In *Department of Transportation, Bureau of Driver Licensing v. Stay*, 114 Pa.

Cmwlth. 532, 539 A.2d 57 (1988), the driver was taken to a police station and asked to submit to a Breathalyzer test, which Stay refused to do. There was, in fact, no Breathalyzer machine at the police station. Stay's response was recorded as a refusal, and his license was suspended. The Common Pleas Court reversed the suspension, concluding that, because there was not a Breathalyzer machine at the police station where Stay was taken, his refusal was a nullity. We reversed that decision, however, concluding that a refusal to submit to chemical testing is not a nullity when the request is made and the refusal is given at a site other than where the test is administered.

In reaching our conclusion in *Stay*, we distinguished *Guarino* from that case because, unlike *Guarino*, Stay refused to submit to the test and did not merely refuse to answer the officer. Also, we distinguished *Abate* because the driver did not merely refuse to go with the officer to a location, but actually refused to submit to chemical testing.

In the present case, as in *Stay*, Millili twice refused to submit to chemical testing. The record indicates, and the Common Pleas Court found as a fact, that Sergeant Cane twice asked Millili to submit to chemical testing and each time advised Millili of the consequences of his refusal. Moreover, at the police station, Sergeant Cane read the form DL-26 to Millili, which discharged Sergeant Cane's duty under the law. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996). Thus, the fact that Millili was not taken to the hospital where the blood test would have been performed does not affect the validity of either of his two refusals. Accordingly, we agree with the conclusion of Common Pleas that Millili was asked to submit to chemical testing and refused to do so, thereby warranting the suspension of his driver's license.

As for DOT's request for counsel fees under Pa. R.A.P. 2741, although Millili principally seeks review of the trial court's credibility determinations, which could be the basis of a frivolous appeal, *DiCola v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 398 (Pa. Cmwlth.1997), Millili did present legal argument concerning the adequacy of the refusal as a matter of law. Accordingly, exercising our discretion, we will not impose counsel fees in this case.

Order affirmed.

## O R D E R

**NOW,** January 31, 2000, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

Judge SMITH and Judge KELLEY dissent.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Because I do not believe that the Department of Transportation (DOT) met its burden of proving that Anthony Millili was given proper chemical test warnings at the scene of the traffic stop or at the police station, I would reverse. Inexplicably, the majority does not address this issue.

It is well-settled that to sustain a license suspension under section 1547(b) of the Vehicle Code,[1] DOT must establish that the motorist: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test of breath, blood or urine; (3) refused to submit to the requested chemical test; and (4) was specifically warned that refusal would result in a license suspension. *Department of Transportation, Bureau of Driver*

1. 75 Pa.C.S. § 1547(b).

2. In stating the facts of this case, the majority says nothing about chemical test warnings at the scene of the traffic stop. (Majority op. at 112.) The majority does state as a fact that Sergeant John Cane read DOT Form DL–26 to Millili at the police station. (Majority op.

*Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997); *Yoon v. Department of Transportation, Bureau of Driver Licensing,* 718 A.2d 386 (Pa.Cmwlth.1998).

There is no question here that DOT proved the first element; Millili was arrested for driving under the influence of alcohol. With respect to the second and third elements, the majority states that the Court of Common Pleas of Montgomery County (trial court) received conflicting testimony concerning whether Millili was asked to submit to a chemical test and whether Millili refused to take a test. (Majority op. at 113.) The majority goes on to say that the trial court reconciled that conflicting testimony and determined that Millili had been asked to submit to a chemical test but refused. (Majority op. at 113.) However, the majority does not address the fourth element, whether Millili was specifically warned that his refusal would result in a license suspension. This is a critical omission in the majority opinion. If DOT failed to prove that Millili was given a proper chemical test warning, then DOT failed to meet its burden, and the license suspension could not be sustained.

In stating the trial court's conclusions in this case, the majority does not even mention the trial court's determination as to whether Millili was specifically warned that refusing to submit to a chemical test would result in the suspension of his driver's license.[2] The trial court found as follows:

Both at the scene of the traffic stop and afterwards at the station house, the officer asked Mr. Millili to submit to a chemical test. In fact, the officer read directly from [DOT's] form entitled

at 113.) However, in summarizing the trial court's conclusions in this case, the majority merely states: "The court concluded that DOT had demonstrated that Millili was asked to submit to chemical testing and refused to do so." (Majority op. at 113.) There is no mention of the trial court's conclusion with respect to the chemical test warnings.

"Chemical Testing Warning and Report of Refusal to Submit to Chemical Testing as Authorized by Section 1547 of the Vehicle Code...." The form states in relevant part:

It is my duty as a police officer, to inform you that if you refuse to submit to the chemical test your operating privilege **will** be suspended for a period of one year.

(Trial court op. at 2.) In other words, the trial court found that the officer read the warning to Millili from a DOT form at the scene of the traffic stop and at the police station. However, the record does not contain substantial evidence to support the finding that Millili received proper warnings at either location.

First, the officer did *not* testify that he read from a DOT form at the scene of the traffic stop. Rather, the officer testified that the DOT forms are kept at the police station, that he does not carry the DOT forms with him and that he *only* read a DOT form to Millili at the police station. (R.R. at 31a.) Clearly then, the record provides no basis for concluding that the officer gave Millili a proper chemical test warning at the scene of the traffic stop.[3]

Second, the officer presented conflicting testimony as to whether he gave Millili a proper chemical test warning at the police station. The officer testified before the trial court that he took Millili to the police station and "read him the refusal form." (R.R. at 24a.) However, the officer admitted on cross-examination that he testified differently at Millili's preliminary hearing. (R.R. at 38a.) At Millili's preliminary hearing, the officer testified that he simply processed Millili at the police station and took him home, that he *never* discussed chemical testing with Millili and that he *never* showed Millili the DOT form. (R.R.

at 38a.) Thus, the officer testified both that *he did* and *he did not* give Millili chemical test warnings at the police station.

Questions of credibility and conflicts in the evidence are for the trial court to resolve. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Conflicts in the evidence most often arise when two different witnesses contradict one another. Here, the same witness contradicted himself, presenting two entirely different stories about what happened at the police station after Millili's arrest. The trial court chose to believe one of the two accounts but did not explain that choice. As the fact finder, the trial court is required to actually resolve conflicts in the evidence; the law does not permit the trial court to simply "flip a coin" and avoid resolving those conflicts.

That is why, in reviewing trial court decisions, this court must examine whether the trial court's findings are supported by substantial evidence. *O'Connell*. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Purcell v. Department of Transportation, Bureau of Driver Licensing*, 689 A.2d 1002 (Pa. Cmwlth.1997). In other words, substantial evidence provides the fact finder with a reason, or reasons, for making a particular determination. *Cf. Hahnemann University Hospital v. Workers' Compensation Appeal Board (Wallace)*, 718 A.2d 391 (Pa. Cmwlth.1998) (holding that a workers' compensation judge must adequately explain the reasons for rejecting conflicting evidence).

Certainly, no one would choose to believe one of two conflicting stories without

---

**3.** Although the record does not support a finding that the officer gave Millili a proper chemical test warning at the scene of the traffic stop, a defective warning can be cured by a post-warning opportunity to assent to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Zeltins*, 150 Pa.

Cmwlth. 44, 614 A.2d 349 (1992). Thus, we must also examine whether the record contains substantial evidence to support the trial court's finding that the officer gave Millili a proper chemical test warning at the police station.

a reason.[4] Here, the trial court offered no reason for choosing to believe that the officer gave Millili a chemical test warning at the police station when the officer admitted testifying under oath that he did *not* do so. Thus, the trial court's finding does not reflect that it is supported by substantial evidence.

Because DOT failed to meet its burden of proving by substantial evidence that the officer gave Millili a chemical test warning at the scene of the traffic stop or at the police station, I would reverse.

Judge KELLEY joins in this dissent.

**4.** To make such a choice would be completely arbitrary, and the administration of justice cannot be arbitrary.