Patrick Anthony HASSON

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2004.

Decided Jan. 25, 2005.

---

Terrance M. Edwards, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

No appearance entered for appellee.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals from an order of the Court of Common Pleas of Indiana County (trial court) that sustained the appeal of Patrick Anthony Hasson (Hasson) from PennDOT's one-year suspension of his driver's license. PennDOT took this action pursuant to 75 Pa.C.S. § 1547, commonly referred to as the Implied Consent Law, because Hasson refused to submit to chemical testing for blood alcohol content after his arrest for driving under the influence of alcohol.

On October 12, 2003, at approximately 9:50 p.m., Patrolman Jason Emigh of the Indiana Borough Police Department observed a silver BMW with a temporary New York license plate traveling at a high rate of speed in the Borough of Indiana. The officer followed the vehicle and attempted to stop it. The vehicle turned into a driveway of an apartment complex where the driver, Hasson, exited and ran "off stride" into one of the units. Reproduced Record at 49a (R.R. ——) Officer Emigh described Hasson as a young, white male with a thin build, brown hair and wearing cut-off cargo shorts and sandals.

Before he could follow Hasson into the building, however, Officer Emigh was dispatched to a disturbance at a nearby Sheetz, located less than one half-mile away. Upon arrival there, he was informed by a Sheetz employee that a white male wearing cut-off cargo shorts and sandals had become involved in an altercation with the security guard over his parking improperly in a handicapped parking space. This individual had just left driving a silver BMW. The description matched that of Hasson.

Officer Emigh returned to the apartment that he had seen Hasson enter and encountered two women; they stated that Hasson had left through the front door of the house. Finding the dew on the front porch not to be disturbed, the officer informed the women that he was going to be examining the silver BMW to obtain the owner and registration information. At that point, Hasson left the apartment and identified himself. Officer Emigh estimated that no more than fifteen minutes had elapsed between the time he left Hasson at the apartment, traveled to the Sheetz and returned.

When Hasson walked out of the apartment, he was holding a twelve-ounce can of Milwaukee's Best Light, which he placed on the ground. Officer Emigh noticed an odor of alcohol emanating from Hasson; in addition, Hasson's eyes were glassy and bloodshot and his eyelids droopy. Officer Emigh picked up Hasson's can of beer, noting that it was "completely full and . . . ice cold as if he had just taken it out of the refrigerator." R.R. 19a. Hasson informed Officer Emigh that after he returned from Sheetz, he had opened up the beer and began drinking.

Officer Emigh questioned Hasson about the altercation at the Sheetz. Hasson's speech was extremely slurred, and Hasson had a difficult time maintaining his balance, needing, alternatively, his car, the side of the building and the police cruiser

to hold himself up. When the officer informed Hasson that he believed that he had been drinking prior to driving his BMW, Hasson then offered several conflicting versions of his consumption of alcohol that evening. Hasson claimed that he had consumed not one beer, but one shot of liquor and one beer and, finally, that he had three shots of liquor and one beer, all since leaving the Sheetz.

Based upon Hasson's changing stories and very intoxicated appearance, Officer Emigh concluded that there had not been sufficient time since leaving the Sheetz for Hasson to develop his high degree of inebriation. Hasson refused to take a field sobriety test. Officer Emigh then placed Hasson under arrest for driving under the influence of alcohol and transported him to the Indiana Borough Police Station.

At the Police Station, Officer Emigh read Hasson the chemical testing warnings from PennDOT's Form DL–26, and asked him to take a test of his breath. Hasson refused, stating that it would yield positive results because he had just consumed alcohol. Officer Emigh explained that the al-

cohol he had just consumed would not show up in his bloodstream. Hasson still refused.

As a result of Hasson's refusal to submit to a chemical test on October 12, 2003, PennDOT notified Hasson by official notice dated December 16, 2003, that his driving privilege was being suspended for a period of one year, effective January 20, 2004 pursuant to 75 Pa.C.S. § 1547.[1]

Hasson filed a timely appeal, claiming that Officer Emigh did not have reasonable grounds to believe that he had been operating a motor vehicle while under the influence, the necessary prerequisite to the request that a driver take a breath test. Hasson did not testify or attend the hearing, but he was represented by counsel. The trial court concluded that Officer Emigh did not have reasonable grounds to believe that Hasson was driving his BMW while under the influence. Accordingly, the trial court sustained Hasson's appeal.

On appeal,[2] PennDOT contends that the trial court erred as a matter of law. It contends that Officer Emigh's testimony, which was credited by the trial court,[3]

---

1. The Implied Consent Law set forth in Section 1547 provides as follows:

   (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: .

   (1) while under the influence of alcohol or a controlled substance or both;

   * * *

   (b) Suspension for refusal.—

   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemi-

cal testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. Our review of a trial court's action in an operating privilege suspension case is confined to determining whether the trial court committed an error of law, or an abuse of discretion, and whether the trial court's findings of fact are supported by substantial evidence. *Zwibel v. Department of Transportation, Bureau of Driver Licensing,* 832 A.2d 599, 603 (Pa.Cmwlth.2003).

3. PennDOT argues that the trial court found Officer Emigh "implicitly credible" because it relied upon the officer's account of the evening. It is not necessary for a fact finding tribunal to make express credibility findings where a witness' credibility is not an issue. Here, Hasson contended that PennDOT did

established reasonable grounds for requesting Hasson to take a blood alcohol test. It contends that the trial court erred in finding that the statement of the employee at Sheetz did not support Officer Emigh's belief that Hasson was under the influence of alcohol when he left the Sheetz in his vehicle.

In summarizing Officer Emigh's account of the evening, the trial court noted the following salient points: that Hasson was speeding; that Hasson fled when Officer Emigh activated his lights; that Hasson ran (with broken gait) into the apartment instead of waiting to speak to the officer; that Hasson's friends dissembled as to his whereabouts; that when Hasson emerged, he was drinking a beer from a can that was "still full and cold;" that Hasson gave several and conflicting accounts of how much and what type alcoholic beverages he had consumed after running into the apartment; and that it was Officer Emigh's opinion that Hasson did not become inebriated after parking his BMW because a quarter hour was too short an interval of time in which to develop bloodshot eyes, dilated pupils, droopy eyelids and a strong odor of alcohol. However, the trial court then reached the following conclusion:

> [T]here is little or no evidence that the defendant operated the vehicle while under the influence of alcohol. The fact that the employee at Sheetz provided the police with no evidence of alcohol consumption by [Hasson] is of great weight. Had the police received evidence from the person that he detected some signs of being under the influence of alcohol the result in this matter may be different. In spite of the fact that the Court finds that [Hasson] had little or no regard for the laws of the Commonwealth and intentionally fled from

the police, the Court is constrained to sustain the appeal.

Opinion at 4–5.

Essentially, the absence of express testimony that Hasson had exhibited inebriation at the Sheetz caused the trial court to sustain Hasson's appeal. The question, then, is whether it was reversible error for the trial court to conclude that this lacuna in the record defeated PennDOT's case against Hasson.

■ In order to support a one-year suspension of a driving privilege under 75 Pa.C.S. § 1547(b)(1), it was necessary for PennDOT to prove that Hasson (1) was arrested for driving under the influence of alcohol or controlled substance by a police officer who had reasonable grounds to believe that he was operating or in actual physical control of the movement of a vehicle while under the influence of alcohol or controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in suspension of his operating or driving privilege. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203, 1206 (1999).

■ Whether evidence is sufficient to constitute reasonable grounds for arrest is a question of law subject to this Court's plenary review. *Gasper v. Department of Transportation, Bureau of Driver Licensing*, 674 A.2d 1200, 1202 (1996). The test for whether a police officer has reasonable grounds for believing a motorist is intoxicated is "not very demanding." *Department of Transportation, Bureau of Traffic Safety v. Dreisbach*, 26 Pa.Cmwlth. 201, 363 A.2d 870, 872 (1976). It is not necessary for the arresting officer to prove that he was correct in his belief that a motorist was operating the vehicle while intoxicat-

not meet its burden of proof, not that Officer Emigh lied.

ed. *Vinansky v. Department of Transportation, Bureau of Driver Licensing,* 665 A.2d 860, 862 (1995). Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. *Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Cmwlth. 201, 363 A.2d 870, 872 (1976).

In deciding this case, we are mindful that it is not the province of the appellate court to make new and different findings of fact. Determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the factfinder. *Millili v. Department of Transportation, Bureau of Driver Licensing,* 745 A.2d 111, 113 (2000). Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 248, 555 A.2d 873, 875 (1989).

Here, the evidence was uncontroverted that Hasson, within 15 minutes, became involved in an altercation at Sheetz, fled from an officer trying to stop his speeding vehicle, and, in the opinion of Officer Emigh, appeared in an advanced state of inebriation for his interview. Beyond having Officer Emigh admit on cross-examination that he did not test Hasson's can of beer for alcohol content, Hasson's counsel did nothing to rebut the evidence on which Officer Emigh based his opinion.[4] Further, a police officer may rely upon his experience and personal observations to render an opinion as to whether a person is intoxicated. *Commonwealth v. Kelley,*

438 Pa.Super. 289, 652 A.2d 378, 382 (1994).[5] Case law in DUI criminal cases teaches that alcohol is not intoxicating until absorbed into the bloodstream and that absorption takes place thirty to ninety minutes after consumption. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384 (2000); *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263, 1266 (1986).

The trial court did not declare Officer Emigh's opinion unfounded or find his testimony incredible. We agree with PennDOT that the trial court implicitly found Officer Emigh credible by crediting his account of the events. However, the trial court accepted the legal argument offered by Hasson's counsel. Specifically, because Officer Emigh did not recount that the Sheetz security guard reported that Hasson looked intoxicated when he entered his BMW, the fact that he appeared intoxicated fifteen minutes later was held to be irrelevant. We agree with PennDOT that the trial court erred in its understanding of case law precedent.

The precedent relied upon by the trial court in reaching its decision are *Fierst v. Commonwealth,* 115 Pa.Cmwlth. 263, 539 A.2d 1389 (1988) and *Department of Transportation, Bureau of Driver Licensing v. Mulholland,* 107 Pa.Cmwlth. 213, 527 A.2d 1123 (1987). These cases are distinguishable.

In *Fierst,* the evidence showed that an officer investigating an accident did not track down the alleged intoxicated driver until one hour after the accident. When interviewed at his home, the licensee demonstrated signs of intoxication. This

---

4. The can of Milwaukee's Best Light was irrelevant to the question of whether Officer Emigh had reasonable grounds to believe Hasson was driving under the influence of alcohol consumed earlier that evening.

5. "Established Pennsylvania law generally accepts that intoxication is a condition within the understanding or powers of observation of ordinary citizens." *Commonwealth v. Korenkiewicz,* 743 A.2d 958, 964 (Pa.Super.1999).

Court found that those facts were inadequate to give the arresting officer reasonable grounds for believing that licensee had been under the influence of alcohol when operating the vehicle. In *Mulholland*, twenty-five minutes after an accident, the licensee was found in a tavern drinking and showing some signs of intoxication. This Court concluded it was mere speculation on the part of the officer that the licensee had been drinking before the accident.

The facts in *Fierst* and *Mulholland* are distinguishable in several important ways. In neither case did the arresting officer see the licensee operating the vehicle. It was only the statements of witnesses that even connected the licensee to the operation of the vehicle involved in the accident. Here, Hasson's operation of the vehicle was observed by the arresting officer; his operation of the BMW was corroborated by Hasson's own statement and by the security guard at Sheetz. In addition, the signs of intoxication exhibited by each licensee in *Fierst* and *Mulholland* were spare; here, Hasson's signs of intoxication were legion, running the gamut from conflicting stories about his drinking to the inability to stand without support during his interview by Officer Emigh. Hasson's degree of apparent intoxication was high. Unruly conduct, such as that exhibited by Hasson at Sheetz, can be a sign of intoxication. *See Commonwealth v. Leninsky,* 360 Pa.Super. 49, 519 A.2d 984, 990 (1986) (wherein the court took judicial notice that "disorderly or unusual conduct" is a sign, among others, of intoxication). Most importantly, *Fierst* and *Mulholland* are limited to their facts. They do not stand for the broad proposition that a police officer lacks reasonable grounds unless he observes signs of intoxication at the very moment the operator steps from the vehicle, nor do these holdings require Penn-DOT to present independent evidence of intoxication prior to the driver stepping into the vehicle. In short, it was not necessary for PennDOT to present evidence that Hasson smelled of alcohol during his altercation with the Sheetz security guard.

■ The trial court misapprehended the standard of proof for an implied consent case. PennDOT did not have to present a witness from the incident at Sheetz to testify that Hasson appeared under the influence as he sped away in his BMW in order for its suspension of Hasson's license to be sustained. His unruly conduct was not inconsistent with intoxicated behavior. It may well be that the security guard would have reported the same signs of intoxication in Hasson that Officer Emigh observed fifteen minutes later had Officer Emigh known to inquire. Indeed, no one asked Officer Emigh whether persons who witnessed Hasson's behavior at Sheetz believed he was intoxicated.[6] The standard in such cases is totality of circumstances; that standard does not require proof that the licensee was inebriated as he entered his vehicle. Viewing the totality of the circumstances, Officer Emigh had reasonable grounds to believe that Hasson was under the influence of alcohol when he

---

**6.** There are many explanations for the lack of testimony on a point not raised at the hearing. It may be that Officer Emigh simply forgot to testify that the Sheetz guard had, in fact, observed Hasson to be intoxicated. It may be that the security guard did not notice because he was overwhelmed by Hasson's coarse, loud and vulgar language. It may be that the guard did not think to tell Officer Emigh that Hasson looked drunk, and the officer did not think to ask. In short, the absence of a statement from the Sheetz security guard is ambiguous to the point of being meaningless. This vacancy in the record does not conflict with or undermine the reasonable grounds for Officer Emigh's belief that Hasson was operating his BMW under the influence of alcohol.

sped through the Borough of Indiana. *Banner*, 737 A.2d at 1206.

Accordingly, the order of the trial court is reversed.

## ORDER

AND NOW, this 25th day of January, 2005 the order of the Court of Common Pleas of Indiana County dated April 19, 2004 in the above-captioned matter is hereby reversed.

**DISSENTING OPINION BY** Senior Judge KELLEY.

I respectfully dissent.

The Majority found its reasoning solely on the premise that the Court of Common Pleas of Indiana County (Trial Court) "implicitly found Officer Emigh credible by relying on his account of the events." Majority Opinion at 8. The acceptance of this implication is contradicted by the Trial Court's own language, notwithstanding its failure to express a clear credibility determination, and is further belied by the Trial Court's disposition in this matter.

The Trial Court first recounted Officer Emigh's testimony regarding the Licensee's operation of his vehicle prior to the Officer's personal confrontation with Licensee, and the Officer's response to the convenience store where a store clerk described an actor and a vehicle matching the Licensee. The Trial Court recounted no conflicting evidence on any of these points, and can be safely presumed to have accepted Officer Emigh's testimony thereon as credible by reference to the Trial Court's own description of these events as having been "clear[ly]" established. Noticeably absent from this portion of the evidence, and from this portion of Officer Emigh's testimony, is any reference to alcohol, or to the Licensee's intoxication.

Officer Emigh's testimony regarding intoxication was also recounted by the Trial Court, which noted conflicting evidence including the Officer's perception of inebriation upon confronting Licensee after he had been driving, and Licensee's actual possession of an open alcoholic beverage *after* Licensee had been operating his vehicle. Notably absent from this conflicting evidence was any corroborating evidence from any other source regarding Licensee's intoxication before or during the period in which he was assumed to have been operating his vehicle. The Trial Court did clearly state that the lack of any corroborating evidence of intoxication by the convenience store employee, who had interacted with Licensee a matter of minutes prior to Officer Emigh's confrontation with Licensee, was "of great weight".

While the Trial Court's employ of the phrase "great weight" in relation to its recounting of the evidence it found sufficient and/or credible is not dispositive in regards to credibility, the only "implicit finding", in the currency of the Majority's language, that I can reasonably ascertain from this language is that of a credibility determination. I find this to be significantly more conclusive than the Majority's assumption in light of the Trial Court's result, and in light of the presumption regularly afforded to parties who have prevailed on the merits in proceedings below. The very fact that the Trial Court stated that it found "little or no evidence that the [Licensee] operated the vehicle while under the influence of alcohol" contradicts PennDOT's "implicit credibility" theory in regards to the Officer's testimony, and in fact implies just the opposite—that said testimony was found *not* credible by the Trial Court.

To find an implied credibility determination, which would directly contradict the Trial Court's result, and which would fail

to acknowledge which evidence below was uncontroverted, and which evidence was conflicted, usurps, in my opinion, the fact finding function and exclusive credibility province of the Trial Court in this matter. *Millili v. Department of Transportation, Bureau of Driver Licensing,* 745 A.2d 111 (Pa.Cmwlth.2000) (Determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the factfinder); *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) (Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review). To find controlling implications in the Trial Court's opinion on review, as has the Majority herein, fails to respect these exclusive provinces of the Trial Court in the absence of its express articulations, and further fails to accord the Trial Court its due deference as the finder of fact in the first instance.

Simply, put, the plain language of the Trial Court's opinion, when examined within the context of the unopposed and contradictory evidence presented below, and with account for the Trial Court's result as reached below, cannot support the Majority's dispositive assumption.

Further, I disagree with the Majority's interpretation of the Trial Court's citation to *Fierst v. Commonwealth*[1] and to *Department of Transportation, Bureau of Driver Licensing v. Mulholland*[2] as having been applied to PennDOT's burden. The Trial Court's opinion neither states, nor can reasonably be read to imply, that any such burden was placed upon PennDOT. That opinion, when read as a whole, clearly *and expressly* relied on the lack of corroborated (and presumably, therefore, credible) evidence of intoxication, and cited to

*Fierst* and *Mulholland* merely as support for similar grants of licensee appeals in the absence of such credible evidence, as in the instant case.

According the Trial Court due deference to its credibility determinations, and with any necessary presumptions on review properly accorded to the prevailing party below, I would affirm.

---

1.  115 Pa.Cmwlth. 263, 539 A.2d 1389 (1988).

2.  107 Pa.Cmwlth. 213, 527 A.2d 1123 (1987).