IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dale King,                          :
                  Appellant                :
                                           :   No.  252 C.D. 2017
            v.                             :
                                           :   Submitted:  June 23, 2017
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED:  August 30, 2017


            Robert Dale King (Licensee) appeals from the February 1, 2017 order of the Court of Common Pleas of Bedford County (trial court) denying his appeal from a one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Bureau).


**Background and Procedural History**

            On May 27, 2016, Pennsylvania State Police Trooper Brandon Miller (Trooper Miller) and his partner, Trooper Corey Ickes (Trooper Ickes), were dispatched to a truck stop in Breezewood, Pennsylvania at approximately 2:09 a.m. following a report of a male passed out on a sidewalk.  Troopers Miller and Ickes arrived at approximately 2:26 a.m. and found Licensee passed out and leaning against

the door of the truck stop. The Troopers had to shake him several times to wake him up. Trooper Miller smelled a strong odor of alcohol on Licensee's breath and person, and noted that Licensee's eyes were bloodshot and glassy. Trooper Miller asked Licensee if he knew where he was. Licensee responded erroneously that he was "at the Econo Lodge off the Donegal Exit of the Pennsylvania Turnpike"; however, Trooper Miller informed him that he was actually in Breezewood. (Reproduced Record "R.R." at 10a-12a.)

Trooper Miller asked Licensee how he arrived in Breezewood and Licensee replied that he drove there. Trooper Miller then asked Licensee where his vehicle was and Licensee responded that his black Chevy Silverado was in the parking lot. However, after searching for the vehicle in the parking lot, Trooper Ickes could not find it. (R.R. at 12a-13a.)

Trooper Miller asked Licensee how much he had to drink and Licensee responded that he had a couple of drinks at his house in Somerset, Pennsylvania. Trooper Miller then asked Licensee if he had anything to drink since he arrived in Breezewood and Licensee said no. Trooper Miller did not perform field sobriety tests because Licensee appeared intoxicated and had difficulty standing upright. However, Trooper Miller conducted a breath test, which revealed a 0.196% blood alcohol content level. Trooper Miller then placed Licensee into custody. (R.R. at 14a-16a.)

After placing Licensee in the rear of the patrol unit, the Troopers drove around the nearby area to look for Licensee's vehicle. They located a black Chevy Silverado at a Quality Inn, which was approximately a quarter of a mile from the truck stop where Licensee had passed out. The vehicle registration showed that it belonged to Licensee. Trooper Ickes felt the hood of the vehicle and it was warm,

2

indicating that the vehicle had been driven recently. The keys were neither on Licensee's person nor were they in or around the vehicle. (R.R. at 15a-27a.)

The Troopers transported Licensee to the University of Pittsburgh Medical Center at Bedford for chemical testing and read the implied consent warnings from the DL-26 form to him. Licensee refused to submit to a blood test and refused to sign the DL-26 form. *Id.*

On July 22, 2016, the Bureau suspended Licensee's operating privileges due to a violation of section 1547 of the Vehicle Code, Chemical Test Refusal.[1] (Trial court op. at 5.)

Licensee appealed the suspension, and the trial court held a hearing on December 1, 2016, at which only Trooper Miller testified. (R.R. at 4a.) Trooper Miller testified as to the facts described above.

On January 30, 2017, the trial court held that the Bureau met its burden of proof under section 1547 of the Vehicle Code. (Trial court op. at 5.) The trial court found that Trooper Miller had reasonable grounds to believe that Licensee was "operating a vehicle under the influence of a controlled substance" on the basis that,

> Trooper [Miller] observed several indications that [Licensee] had imbibed alcohol, including the fact that he passed out upon a sidewalk at 2:00 a.m. [Licensee] admitted to drinking alcohol, stated that he began doing so at his home in Somerset, and—most importantly—told [Trooper Miller] that he had nothing to drink while at his current location in Breezewood, which is where his vehicle was last parked. Lastly, the troopers located [Licensee's] vehicle nearby and at least one trooper observed that [Licensee's] truck was unlocked and the hood was warm.

---

[1] 75 Pa.C.S. §1547.

(Trial court op. at 4.)  The trial court found that the totality of the circumstances were sufficient to support a reasonable belief that Licensee drove while intoxicated and re-instated the suspension of Licensee's operating privileges.  *Id.*

On March 1, 2017, Licensee appealed to this Court.[2]

### Discussion

On appeal, Licensee argues that Trooper Miller lacked the reasonable grounds to believe that Licensee was operating or was in actual physical control of a vehicle while under the influence of a controlled substance.  (Brief for Appellant, at 10-13.)  More specifically, Licensee argues that the trial court erred in "examining the totality of the circumstances" and subsequently relying on "vague 'admissions' of [Licensee] as paraphrased by the trooper who acknowledged the appellant was very intoxicated and clearly confused as to his whereabouts."  *Id.* at 10.

Licensee further contends that an objective time frame was required as there were no witnesses to his driving behavior, and that such a time frame was not established.  *Id.* at 10, 13-18.  Licensee argues that a lack of a time frame means that it cannot be inferred that he actually operated a vehicle while under the influence, noting that evidence was neither offered to account for the time frame between Licensee's travels and the Troopers' arrival, nor to suggest what roads Licensee travelled, when he arrived at the Quality Inn, or for how long he was passed out at the truck stop.  *Id.*  Licensee contends that his actions "during the hours of the day/night in question are pure guesswork and speculation," and, as such, do not support a

---

[2] Our scope of review is limited to determining whether the trial court committed an error of law, or abused its discretion, or whether the findings of facts are supported by competent evidence. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989).

4

reasonable belief finding. *Id.* Licensee further argues that his "vague statement that 'he drove to his location' at some undetermined time" is inadequate for an officer to reasonably believe that he drove under the influence of a controlled substance. *Id.*

Licensee next contends that the factors the trial court relied on were unreliable and speculative. More specifically, Licensee contends that the location he admitted to driving towards is speculative given his confusion regarding where he was since he believed he was at the Econo Lodge in Donegal rather than in Breezewood, a difference of forty-three miles. Licensee further contends that it was also speculative to assume that he drove while under the influence of alcohol based on his statement that he "did not drink alcohol in Breezewood" without any additional evidence. (Brief for Appellant, at 16-17.) Finally, Licensee contends that the warm hood of his car is not a reliable factor as the incident occurred at the end of May, and therefore should not be considered a sign of recent use.

The Bureau responds that, when considering the totality of the circumstances, Trooper Miller had reasonable grounds to believe that Licensee was operating or was in actual physical control of the movement of a vehicle while he was under the influence. (Brief for Appellee, at 8-9, 12-14.) The Bureau concurs with Licensee's argument that it is required to show some other objective evidence to establish a time frame between a licensee's arrest and the operation of a vehicle that would support the arresting officer's conclusion that the licensee was driving under the influence. However, the Bureau contends that a time frame was established as the trial court found that Licensee admitted to imbibing alcohol before leaving his house in Somerset; that Licensee drove to the location where the Troopers found him at 2:26 a.m.; that Licensee stated that he had not consumed any additional alcoholic beverages since arriving in Breezewood; and that the hood of his vehicle was still

warm. The Bureau further contends that the exact time of Licensee's drinking and subsequent driving is not required to support a finding of reasonable grounds. Lastly, the Bureau contends that Licensee's argument that his statements about drinking alcohol were speculative essentially requests this Court to reweigh the credibility of evidence, and, as such, is outside the authority of this Court. (Brief for Appellee, at 12-19.)

Section 1547 of the Vehicle Code permits the Bureau to suspend operating privileges for one year and, in order to do so, the Bureau must prove four elements: (1) was arrested by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while he was committing an offense under 75 Pa.C.S. §3802; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating or driving privilege and would result in his being subject to the penalties set forth in 75 Pa.C.S. §3804(c), if he were later convicted of violating 75 Pa.C.S. §3802(a)(1). *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Licensee's sole challenge on appeal is to the first element, arguing that Trooper Miller did not have reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while he was under the influence of alcohol.[3]

An officer has a reasonable belief when the officer, "viewing the facts and circumstances as they appeared at the time, could have concluded that the

---

[3] The Supreme Court has recently addressed the legality of blood tests in traffic stops in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), finding that motorists may not be criminally punished for refusing to submit to a blood test based on legally implied consent to submit to them. However, this issue has not been raised here.

motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). Further, "[t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution." *Id.* This standard is determined by the totality of the circumstances, which may include "the location of the vehicle, whether the engine was running, whether there was evidence that the licensee had driven the vehicle before the arrival of the police, the licensee's general appearance, and the licensee's behavior." *Id.* The question of reasonable grounds is reviewed on a case by case basis. *Id.*

It is not necessary for an officer to see a licensee operating a vehicle while under the influence in order for that officer to have reasonable grounds to believe that a party was operating or in actual physical control of a vehicle. *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 436 (Pa. Cmwlth. 2014). When an officer does not observe the licensee behind the wheel, there must be a showing of some other objective evidence establishing a time frame "between the licensee's driving and the licensee's intoxication." *Sestric v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 141, 144 (Pa. Cmwlth. 2011). *See also Demarchis v. Department of Transportation, Bureau of Driver Licensing,* 999 A.2d 639, 644 (Pa. Cmwlth. 2010); *Stahr v. Department of Transportation, Bureau of Driver Licensing,* 969 A.2d 37, 41 (Pa. Cmwlth. 2009).

Here, Licensee relies on these cases in support of his argument. However, such reliance is misplaced. In *Stahr*, the arresting officer responded to an accident scene, where the licensee had abandoned his vehicle following the accident. 969 A.2d at 39. The arresting officer found the licensee at his home, where the licensee smelled of alcohol, had slurred speech, had an unsteady gait, and admitted to

consuming alcohol. *Id.* This Court found that the arresting officer could not reasonably conclude that the licensee was driving under the influence of alcohol based only on these signs without establishing the time frame between the accident and the observed intoxication. *Id.* at 41.

In *Sestric*, this Court found that the officer could not reasonably conclude that the licensee was driving under the influence because no evidence was offered to connect the licensee's drinking and driving, noting that the trial court specifically found that the arresting officer was "incredible with respect to the amount of time that passed during the incident." 29 A.3d at 143-44.

In *Demarchis*, the arresting officer located an abandoned vehicle following a call of a suspected DUI driver, and then found the vehicle's owner, the licensee, at the licensee's residence. 999 A.2d at 641. The officer noted that the licensee not only "walked with a staggered gait, was unsteady, and had slurred his words," but also had a bracelet on his wrist indicating that he had been at a drinking establishment. *Id.* The licensee stated that a friend drove his vehicle. *Id.* This Court found that there was no objective evidence to support the officer's suspicion that the licensee was in control of his vehicle, noting that the licensee denied operating his vehicle and there was "simply no way to infer or estimate the length of time between the initial notice from the dispatch and the arrest based solely on Licensee's apparent attendance at some undetermined time at a nightclub, his alleged driving at an undetermined time, and his abandoning his vehicle at yet another undetermined time." *Id.* at 644.

Here, as the trial court found, the Bureau established the necessary time frame. The Troopers were dispatched to the truck stop in Breezewood at approximately 2:09 a.m. and arrived at approximately 2:26 a.m. In response to

8

questions, Licensee said that he drove to Breezewood from Somerset, admitted that he imbibed multiple alcoholic drinks at his home in Somerset that night, and stated that he did not have any additional drinks since arriving in Breezewood. Following his arrest, the Troopers located Licensee's vehicle and the hood of the vehicle was still warm to the touch. A warm hood of a vehicle supports an officer's reasonable belief that the vehicle was recently driven. *Keane v. Department of Transportation*, 561 A.2d 359, 361 (Pa. Cmwlth. 1989). Unlike in *Stahr*, *Sestric*, and *Demarchis*, the warm hood of Licensee's vehicle, combined with Licensee's admission to driving from his home in Somerset to Breezewood, indicates that he was operating or was in actual physical control of the vehicle prior to the Troopers' arrival at the truck stop around 2:26 a.m.

Further, Trooper Miller had reasonable grounds to believe that Licensee was under the influence. An officer may rely on personal experiences and observations to determine when a person is intoxicated. *Hasson v. Department of Transportation, Bureau of Driver Licensing,* 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005). Here, Trooper Miller found Licensee asleep or passed out against the door of the truck stop; Trooper Miller smelled a strong odor of alcohol on Licensee; Licensee's eyes were bloodshot and glassy; Licensee was confused about his location; Licensee admitted to consuming alcohol at his house in Somerset; and Licensee's preliminary breath test indicated a reading of 0.196% blood alcohol content.[4]

---

[4] Commonly referred to as the "general impairment" provision at section 3802(a)(2) of the Vehicle Code defining the crime of DUI as follows:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after

**(Footnote continued on next page…)**

9

Therefore, Trooper Miller had reasonable grounds to believe that Licensee was operating or was in actual physical control of the movement of a vehicle while he was under the influence of alcohol.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cosgrove dissents.

---

**(continued…)**

> the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. §3802(a)(2).

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dale King,                                :
                Appellant                      :
                               :   No.  252 C.D. 2017
         v.                                :
                               :
Commonwealth of Pennsylvania,        :
Department of Transportation,            :
Bureau of Driver Licensing              :

## *ORDER*

AND NOW, this 30th day of August, 2017, the order of the Court of Common Pleas of Bedford County, Pennsylvania is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge