647 A.2d 299

**Randy E. McQUAIDE,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 1, 1994.

Decided Aug. 19, 1994.

684

David R. White, Asst. Counsel–Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellant.

Rex W. McQuaide and Thomas W. Cartwright, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Cambria County (trial court) sustaining Randy E. McQuaide's (Licensee) appeal and vacating the suspension of Licensee's operating privilege imposed by DOT pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing). Following a *de novo* hearing, the trial court found that, as a result of injuries sustained in an automobile accident on August 22, 1993, Licensee could not knowingly and consciously refuse to submit to a blood alcohol test.[1] We affirm.

1. The trial court's order stated as follows:

AND NOW, this 30th day of December, 1993, upon consideration of Defendant's motor vehicle appeal, it is hereby ORDERED, DIRECTED and DECREED that Defendant's driver's license suspension for refusal to submit to a blood alcohol test be dismissed and his driving privileges be reinstated. Upon careful review of the arguments made by counsel and applicable law, this Court finds that the Defendant suffered from an obvious inability to comply with the request to be chemically tested at the time the incident occurred. *Commonwealth,*

 On appeal,[2] DOT asks us to determine whether competent evidence supports the trial court's conclusion that Licensee did not knowingly or consciously refuse to submit to a blood alcohol test.[3]

Here, Conemaugh Township Police Officer Howard Jackson testified that on the evening of August 22, 1993, he was dispatched to investigate a van stopped in the right lane of Route 219 North. (R.R. at 11a.) Upon arriving at the scene, Officer Jackson noticed a van idling in the right lane and blocking traffic. (R.R. at 12a.) Officer Jackson approached

*Department of Transportation v. Walsh*, 146 Pa.Comwlth. 461, 606 A.2d 583 (1992). Therefore, Defendant's motor vehicle appeal from driving suspension is hereby granted and Defendant's driving privileges shall not be suspended.

We note that the trial court failed to indicate any factual findings or credibility determinations in its opinion.

2. Our scope of review of a trial court's decision in a license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. Walsh*, 146 Pa. Commonwealth Ct. 461, 606 A.2d 583 (1992).

3. DOT also presents the issue of whether its evidence was sufficient to establish a *prima facie* case.

To sustain a license suspension under 75 Pa.C.S. § 1547(b), DOT must establish that the licensee:

(1) was arrested for driving while under the influence of alcohol,

(2) was requested to submit to a chemical test,

(3) refused to submit to such a test, and

(4) was specifically warned that a refusal would result in the revocation of his driver's license.

*Department of Transportation, Bureau of Driver Licensing v. Jennings*, 156 Pa. Commonwealth Ct. 219, 627 A.2d 211 (1993). After DOT has established that the licensee refused to submit to the chemical test, the burden shifts to the licensee to prove by competent evidence that he was physically unable to take the test or was incapable of making a knowing and conscious refusal. *Id.*

The trial court's determination was premised upon Licensee's proof by competent evidence that he was incapable of making a knowing and conscious refusal. That determination can only occur after DOT has sustained its burden of proof. Therefore, the trial court's order clearly demonstrates that DOT proved the four elements required to sustain Licensee's suspension. Licensee did not question that determination. Accordingly, because DOT does not have to argue the sufficiency of its prima facie case before us, we focus upon Licensee's capacity to make a knowing refusal.

the van and found Licensee sitting in the van with his hands upon the steering wheel. Officer Jackson also noticed that Licensee was bleeding, that his face was swollen and that his one eye was swollen shut. (R.R. at 12a–13a.) Officer Jackson testified that Licensee was conscious, acted disoriented, smelled of alcohol, and talked with slurred speech. (R.R. at 13a, 16a, 19a.) Officer Jackson asked Licensee what had happened and Licensee responded that he had been drinking and had gotten into a fight. (R.R. at 13a, 15a.) Noticing the severity of Licensee's injuries, Officer Jackson summoned an ambulance and informed Licensee that he was being transported to the hospital for his injuries and for blood alcohol testing. (R.R. at 14a, 15a, 26a.)

At the hospital, Licensee refused to submit to a blood alcohol test. (R.R. at 17a.) The emergency room nurse subsequently telephoned the Conemaugh Township police station to inform Officer Jackson of Licensee's refusal. (R.R. at 17a.) Officer Jackson, who had remained at the accident scene awaiting a tow truck for Licensee's van and then returned to the station, went to the hospital with a DL–26 Chemical Testing Warnings and Report form, read the form to Licensee, and asked Licensee to submit to a blood test. (R.R. at 17a–21a.) Licensee signed the form, but refused to take the blood test. (R.R. at 21a.) Officer Jackson asked Licensee once more to take the blood test; however, Licensee refused. (R.R. at 22a.)

Licensee, the only other witness at the hearing, testified that he was involved in an accident earlier that evening, and when he stopped to check his vehicle's damage, an occupant of the other vehicle involved hit him over the head with a tire iron and proceeded to kick him until Licensee became unconscious.[4] (R.R. at 28a.) Upon regaining semi-consciousness,

---

4. Licensee testified as follows:

> A. A car passed me and hit me on the left front corner and we both came to a stop. I got out to see if everybody was okay and I was at the passenger door. And the next thing I remember is severe pain to my head and my nose and my throat and an individual kicking me.

Licensee had difficulty breathing. Licensee testified, "I remember difficulty breathing and I remember being scared. I had a neck injury which required a tracheotomy years before and I had that feeling of not being able to breathe and I was scared. And I recall knowing that I had to get to the hospital." (R.R. at 29a.) Licensee then returned to his van and proceeded to drive; however, Licensee did not recall driving. (R.R. at 29a.) Licensee testified that he did not recall being taken to the hospital; nor did he recall any events that occurred in the hospital, including his signing of the DL–26 form. (R.R. at 29a, 32a.) As to his injuries, Licensee introduced a photograph taken three days after the incident, which showed the extent of his injuries, and testified as follows:

A. I physically sustained a broken nose, a broken collar bone. I guess they call it a laceration. I had three or four stitches under my eye. My eye was swollen shut. I had bruises all over my chest, black and blue marks and swelling on the neck and face.

Q. Did you have bruises about the head and did you suffer any type of concussion?

A. I still have problems with nerves in the side of my face. I had bruises all over my head and my jaw. I had four chipped teeth. And I guess a concussion.

(R.R. at 30a.) Licensee concluded that he would certainly have taken the blood test if he had understood what was going on and that he had no reason to refuse to take the test because he was not drunk. (R.R. at 32a.)

The trial court, in concluding that Licensee suffered from an obvious inability to comply with the request to be chemically tested, relied on *Department of Transportation, Bureau of Driver Licensing v. Walsh*, 146 Pa. Commonwealth Ct. 461,

Q. Did you subsequently learn that you were hit about the head with a tire iron?

A. Yes, later way after the fact. I was hit on the left side of my face which knocked me unconscious and then this individual continued to I guess kick me until I was approximately 12 feet in front of the car.

(R.R. at 28a.)

606 A.2d 583 (1992). In *Walsh*, we held that "[w]here a licensee has sustained injuries but does not suffer from an obvious inability to comply with the request to be tested, competent medical testimony is required to prove that a knowing and conscious refusal could not be made." *Id.* at 466, 606 A.2d at 585. However, unlike Licensee here, Walsh did not suffer from an obvious injury and was required to present medical testimony.

■ We agree with the trial court's implicit premise that a medical opinion to validate a licensee's refusal to submit to a chemical test is not required when *severe, incapacitating* injuries are *obvious*. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa. Commonwealth Ct. 400, 550 A.2d 873 (1988), *appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989). Such a determination is a finding of fact and will be affirmed if competent evidence of record supports that determination. *See Department of Transportation, Bureau of Driver Licensing v. Rogers*, 110 Pa. Commonwealth Ct. 453, 532 A.2d 935 (1987).

■ Although the fact finder cannot necessarily assume from looking at an injury that the injured person was thereby rendered incapable of making a knowing and conscious refusal, the trial court judge is not required to leave his common sense at home when assessing the obviousness, severity, and incapacitating effects of Licensee's injuries. Here, the trial court apparently found credible Licensee's testimony as to the severity of his injuries and their incapacitating effect on him. *See Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa. Commonwealth Ct. 49, 500 A.2d 214 (1985). In fact, the record reveals that even Officer Jackson, upon observing the severity of Licensee's injuries, decided that the injuries were severe enough to forgo field sobriety testing and require immediate emergency medical treatment.[5] (R.R. at

---

5. Officer Jackson testified as follows:
 Q. Did his wounds appear to be severe to you?
 A. Yes.
 Q. Severe enough to the point where you deferred to an ambulance crew to take him to the hospital?

25a–26a.) Although Licensee did not present any medical evidence in support of his refusal at trial, we believe that such testimony was unnecessary in light of the obvious severity and incapacitating effects of Licensee's injuries.

We conclude, therefore, that competent evidence exists to support the trial court's determination that Licensee failed to make a knowing and conscious refusal. Accordingly, we affirm the trial court's order.

## ORDER

AND NOW, this 19th day of August, 1994, the order of the Court of Common Pleas of Cambria County, dated December 20, 1993, at Docket Number 1993–2544, is hereby affirmed.

Q. Severe enough that you didn't feel it was necessary to give him a field sobriety test?

(R.R. at 25a–26a.)