### George W. OSTERMEYER, III

### v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 19, 1997.
Decided Dec. 19, 1997.

Matthew X. Haeckler, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

No appearance entered for appellee.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue on appeal is whether the injuries sustained by an appellee as a result of his automobile accident were so obvious and severe that he was not required to present expert medical testimony at his drivers' license suspension hearing, at which he attempted to excuse his refusal to submit to a blood-alcohol test following the accident, on the grounds that the accident left him too disoriented to provide a knowing and conscious refusal.

 The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the appeal of George Ostermeyer (Ostermeyer) and ordered that Ostermeyer's driving privilege shall *not* be suspended for one year for refusing to submit to a chemical test of intoxication in violation of Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(a) and (b). Because the trial court erred in holding that Ostermeyer's injuries precluded him from making a knowing and conscious decision to refuse the chemical test and therefore excused his refusal, we reverse.[1]

The relevant facts are as follows. On November 11, 1996, Ostermeyer was arrested by Officers Krek and Colucci of the Brentwood Police Department following an accident involving Ostermeyer, who subsequently failed field sobriety tests. The officers noticed that the windshield of Ostermeyer's vehicle was cracked, apparently having been struck by Ostermeyer's and/or his wife's heads as a result of the accident, and the couple was transported by ambulance to Mercy Hospital.

At the hospital, Officer Colucci read Ostermeyer his *O'Connell* warning[2] and requested

1. In reviewing the trial court's decision in a license suspension case, the standard of review of this Court is to determine if the factual findings of the trial court are supported by competent evidence or if the trial court committed an error of law or abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996); *Department of Transportation, Bureau of Driver Licensing v. Holsten*, 150 Pa.Cmwlth. 1, 615 A.2d 113 (1992). Questions of witness credibility are solely within the province of the trial court. *Scott.*

2. In *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), the Supreme Court held that an arresting officer has a duty to clarify to the motorist that the right to counsel as provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is inapplicable to a chemical test request. Furthermore, the officer is required to inform the motorist that refusal to submit to a chemical test of intoxication will result in a license revocation.

that he submit to a blood-alcohol test. Ostermeyer refused, and his driving license was suspended for one year pursuant to 75 Pa. C.S. § 1547(b). Ostermeyer appealed the suspension to the trial court and a *de novo* hearing was held on October 10, 1996, before Judge Watson.

At the October 10, 1996 hearing, the Department presented the testimony of Officers Krek and Colucci, while Ostermeyer testified on his own behalf but did not present any expert medical testimony.

Officer Krek testified that he noticed two cracks in the vehicle's windshield due to both victims' heads going through the windshield, but that Ostermeyer did not appear to have any visible injuries. Officer Colucci testified that Ostermeyer did not appear to be injured nor disoriented but did appear intoxicated. Both officers testified that, after Ostermeyer twice refused to submit to the blood-alcohol testing, they left the hospital and returned to the police station.

Ostermeyer, testifying on his own behalf, admitted that he had been drinking prior to the accident but stated that he was "fading in and out" and "getting confused" because of his head hitting the windshield of his vehicle. Ostermeyer also testified that he never refused to submit to the blood-alcohol test, and that he did, in fact, undergo the test after the officers left the hospital. Ostermeyer did not present any medical testimony to support his assertion that he was disoriented and confused due to his alleged head injuries.

By order dated October 11, 1996, the trial court sustained Ostermeyer's appeal, concluding that, despite the credible testimony of Officers Krek and Colucci, Ostermeyer's injuries rendered him confused and thereby precluded him from making a knowing decision to submit to or refuse the blood-alcohol testing. Ostermeyer's refusal to submit to the testing was therefore excused.

In this appeal, the Department argues that the trial court erred in finding that Ostermeyer was incapable of making a knowing and conscious refusal to submit to the blood test due to his alleged injuries because he presented no expert medical testimony to support that proposition and because his in-juries were not so obvious and severe that expert testimony was not required.

■ Before a license suspension in accordance with 75 Pa.C.S. § 1547 will be sustained, the Department must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test of intoxication; (3) refused to submit to such test; and (4) was specifically warned that a refusal would result in the revocation of his drivers' license. *Scott; Holsten.* In the instant case, these elements were established via the testimony of Officers Krek and Colucci, who were found to be credible by the trial court.

■ Once the Department has met its burden of establishing the above four factors, it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the test. *Scott; Holsten.* Moreover, a driver's self-serving testimony that he was incapable of providing a knowing and conscious consent to or refusal of a chemical test is not sufficient to meet his burden of proof, and expert medical testimony, although not a *per se* requirement, is generally required in order to validate his testimony. *Holsten; Department of Transportation, Bureau of Driver Licensing v. Garlan,* 121 Pa.Cmwlth. 400, 550 A.2d 873 (1988), *appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989). However, an expert medical opinion to validate a driver's alleged inability to make a knowing and conscious refusal (or agreement) to submit to a chemical test will *not* be required when *severe, incapacitating* injuries are *obvious. Holsten; Garlan.*

In *Garlan,* the driver whose license was suspended countered the Department's case by testifying that his refusal of a chemical test was not made knowingly and consciously because he had suffered a concussion, a corneal abrasion, and a loss of memory. However, no medical evidence was provided. Instead, the driver presented only his own testimony, the testimony of his father, and several pictures, one of which showed his vehicle's broken windshield and another which showed him lying in the hospital with a bandage on his head and over his eye.

The court in *Garlan* concluded that the driver did not meet his burden of proof because his injuries were not so obvious and incapacitating that expert medical testimony was not required. The court in *Garlan* also distinguished *Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa. Cmwlth. 49, 500 A.2d 214 (1985), wherein the court held that a broken jaw, severe facial lacerations, a broken arm, an injured leg, and blows to the head *were sufficiently obvious and severe* such that expert medical testimony was *not* required in order to establish that the driver was incapable of providing a knowing and conscious refusal to submit to a chemical test.

■ This Court concludes that the instant case is more analogous to *Garlan* than to *Day*, and in fact Ostermeyer's case is not even as compelling as that of the driver in *Garlan*, who lost on appeal. The driver in *Garlan* did provide *some* additional evidence beyond his own testimony, but it was still insufficient since his injuries were not severe and obvious and he did not provide any *expert medical testimony*. Similarly, Ostermeyer provided the trial court with nothing more than his own testimony that he "was fading in and out from hitting [his] head on the windshield."

The trial court specifically found that the testimony of Officers Krek and Colucci, who stated that Ostermeyer appeared intoxicated but was not injured or otherwise disoriented due to the accident, was credible. Furthermore, Ostermeyer's injuries were not so severe and obvious such that expert testimony was not required in order to establish that he was incapable of providing a knowing and conscious refusal of the test. Since Ostermeyer did not provide such expert medical testimony, he did not meet his burden of proof. The trial court thus erred in not requiring Ostermeyer to produce expert medical testimony to support his alleged inability to make a conscious and knowing decision on whether to submit to the blood-alcohol test.

Accordingly, we reverse the trial court and reinstate the decision of the Department suspending Ostermeyer's license for one year.

## ORDER

AND NOW, this 19th day of December, 1997, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed and the one-year suspension of George W. Ostermeyer, III's driving privileges imposed by the Department of Transportation is reinstated.

KELLEY, J., dissents and files opinion.

KELLEY, Judge, dissenting.

I respectfully dissent.

Though the majority opinion sets forth a proficient analysis of the evidentiary particulars of license suspensions, I find that it was done in the face of this court's scope of review as it applies to trial court decisions. Inherent in the majority's opinion is their finding of fact that Ostermeyer's head injury is neither obvious nor severe. Not only is this improper in our role as an appellate court, I find it not to be based upon competent evidence.

The majority correctly stated this court's scope of review and noted that questions of credibility are solely within the province of the trial court. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996). Additionally, I would emphasize that whether a licensee sustained his or her burden of showing incapacity to make a knowing and conscious refusal to submit to chemical testing is a factual determination to be made by the trial court. *Plotts v. Department of Transportation, Bureau of Driver Licensing*, 660 A.2d 133 (Pa.Cmwlth.1995). The determination is unreviewable by this court unless the record is bereft of competent evidence to support such a determination. *Id.*

Here, the trial court found Ostermeyer to have credibly testified with regard to his mental and physical condition at the scene of the accident. Ostermeyer stated that he was in a very confused state due to the injuries he sustained in the accident. Reproduced Record (R.) at 22a–23a. Based on this testimony, the trial court determined that Ostermeyer's confusion prevented him

from knowingly and consciously refusing the blood-alcohol test.

The trial court also found the testimony of Brentwood Police Officers Krek and Colucci to be credible. The officers received a call on November 11, 1995 for an accident with injuries. R. at 7a. With regard to his arrival at the scene of the accident, Officer Krek testified as follows:

Q What happened at that point once you had arrived at the location of the accident?

A We notice [sic] there's two cracks in the windshield due to the victims' head going through the windshield. We radioed immediately for -

THE COURT: What about the windshield?

A We noticed there was two cracks from the windshield from head wounds. We radioed for the Brentwood EMS to come to the scene. ...

\* \* \*

Q Let me ask, backing up, did you observe Mr. Ostermeyer to have any visible injuries at that time?

A No, I don't believe so.

Q Despite the fact that you observed the windshield cracked, you did not observe -

A I don't believe he had a cut on his head.

R. at 8a–9a.

Even though Officer Krek did not observe Ostermeyer to have external wounds, it is clear that he believed that Ostermeyer had sustained some type of internal head injury. The head injury was severe enough to warrant the calling of the Brentwood EMS who subsequently transported Ostermeyer to the hospital. The majority does concede that expert medical testimony is not a *per se* requirement of the licensee's burden of proof. They conclude, however, that it was neces-

sary for Ostermeyer to submit expert medical testimony because they found Ostermeyer's injuries to be not severe or obvious. This is done even though the trial court determined Ostermeyer's head injury to have placed him in such a confused state that it precluded him from making a knowing refusal of the blood alcohol test. The trial court's conclusion is supported by the credible testimony of Ostermeyer and the police officers. The officers specifically established that Ostermeyer had smashed his head against the windshield of his car with such force that it required medical attention.[1]

With respect to Ostermeyer's level of inebriation, I would note that the officers provided inconsistent testimony. Officer Krek stated that when he first interrogated Ostermeyer at the scene of the accident, Ostermeyer had a *strong* odor of alcohol on his person. (R. at 8a). Officer Colucci, on the other hand, testified that Ostermeyer had a *moderate* odor of alcohol emanating from his person. (R. at 16a) This contradictory testimony supports the trial court's determination that Ostermeyer's state of confusion had been caused by the accident as opposed to alcohol.

Accordingly, I would hold that sufficient evidence supports the trial court's conclusion that Ostermeyer's head injury precluded him from making a knowing and conscious decision regarding the blood-alcohol test. I would, therefore, affirm the trial court's order.

---

1. I would also comment on the careless actions taken by the officers at the scene of the accident. As noted, the officers responded to a call of an accident with injuries. Upon arrival, the officers observed the car to have a cracked windshield due to Ostermeyer's head slamming against it. They properly called for EMS support. Then, somewhat unbelievably, Officer Krek asked Ostermeyer to step from his car and proceeded to submit him to field sobriety tests. Officer Krek testified that he only gave two tests due to Ostermeyer's lack of balance and the officer's concern that Ostermeyer may injure himself. I simply wonder why the police officer ordered Ostermeyer out of his car when he knew that Ostermeyer had a head injury severe enough to warrant the request for emergency medical personnel.