**Diane M. LANTHIER, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2010.

Decided May 31, 2011.

Thomas E. Mincer, Milford, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and BROBSON, Judge.

OPINION BY Judge BROBSON.

Appellant Diane M. Lanthier (Lanthier) appeals from an order of the Court of Common Pleas of Pike County (trial court), dated March 5, 2010. The trial court denied Lanthier's appeal and sustained the Department of Transportation's (DOT) one-year suspension of her operating privilege pursuant to Section 1547 of the Vehicle Code (Code), 75 Pa.C.S. § 1547,[1] for her refusal to submit to chemical testing. For the reasons that follow, we affirm.

In order to sustain a suspension of a licensee's operating privilege under Section 1547 of the Code for a refusal to submit to chemical testing, DOT must establish that the licensee:

(1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth.2010). A "refusal" is "anything substantially less than an unqualified, unequivocal assent to [submit to] a [chemical] test.... A refusal need not be expressed in words, but can be implied from a motorist's actions." *Dep't of Transp. Bureau of Traffic Safety v. Mumma*, 79 Pa.Cmwlth. 108, 468 A.2d 891, 892 (1983) (citations omitted). Whether the conduct of a licensee constitutes a refusal is a question of law. *Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, 140 Pa.Cmwlth. 484, 593 A.2d 932, 934 (1991).

If DOT satisfies the above four elements, the burden shifts to the licensee

1. Section 1547 of the Code, commonly referred to as Pennsylvania's Implied Consent Law, provides, in pertinent part:

 (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a vehicle in the Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of the vehicle:

 (1) in violation of [S]ection ... 3802 (relating to driving under influence of alcohol or controlled substance.
 ....
 (b) Suspension for refusal.—
 (1) If any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
 (i) Except as set forth in subparagraph
 (ii), for a period of 12 months.

to establish that she was not capable of making a conscious and knowing refusal to submit to chemical testing. *Kollar*, 7 A.3d at 339. A licensee's self-serving testimony that she was unable to provide a conscious and knowing refusal is insufficient to satisfy the licensee's burden of proof. *Id.* at 340. Although not a *per se* requirement, medical testimony is generally required to establish that a licensee was incapable of providing a knowing and conscious refusal of chemical testing. *Id.; Ostermeyer v. Dep't of Transp., Bureau of Driver Licensing*, 703 A.2d 1075, 1077 (Pa.Cmwlth.1997). Notwithstanding, medical testimony is not required where the severity and incapacitating effect of a licensee's injuries are *obvious. Ostermeyer*, 703 A.2d at 1077; *McQuaide v. Dep't of Transp., Bureau of Driver Licensing*, 166 Pa.Cmwlth. 683, 647 A.2d 299, 301–02 (1994). Whether a licensee was capable of making a conscious and knowing refusal is a factual determination to be made by the trial court.[2] *Kollar*, 7 A.3d at 340.

Here, DOT notified Lanthier by letter dated November 4, 2009, that her operating privilege was being suspended for a period of one year pursuant to Section 1547 of the Code. Lanthier filed a timely appeal with the trial court, and the trial court heard the matter *de novo* on February 24, 2010. Testifying for DOT was Trooper Gregory Rossi (Trooper Rossi) of the Pennsylvania State Police. Lanthier testified on her own behalf.

Trooper Rossi testified that he was dispatched to the site of a single-vehicle accident at approximately 1:40 a.m. on October 15, 2009. Upon arrival at the scene, Trooper Rossi encountered a vehicle with severe front-end damage that had been abandoned by the roadside. Thereafter, Trooper Rossi was directed to a nearby residence where Lanthier, the driver of the vehicle, was being treated for injuries she incurred during the accident.

Trooper Rossi testified that upon entering the residence he found Lanthier "sitting at a kitchen table with a towel, washcloth on her head and she had some minor lacerations on either her forehead or the side of her head." (Reproduced Record (R.R.) at 14a.) Lanthier explained to Trooper Rossi that the accident occurred when she swerved to avoid hitting deer that had entered the roadway. Smelling alcohol on Lanthier's breath, Trooper Rossi asked Lanthier if she had been drinking, to which Lanthier responded that she had consumed two alcoholic drinks, but was not drunk. Shortly thereafter, an ambulance arrived to take Lanthier to the hospital.

Trooper Rossi testified that after Lanthier was loaded onto a gurney and placed into the ambulance, he notified Lanthier that she was under arrest for driving under the influence and read Form DL–26 verbatim, advising Lanthier of the Implied Consent Law and providing her the warnings required by *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).[3],[4]

2. If the motorist's inability to make a knowing and conscious refusal of testing is caused in whole or in part by consumption of alcohol, the licensee is precluded from meeting her burden as a matter of law. *DiGiovanni v. Dep't of Transp., Bureau of Driver Licensing*, 717 A.2d 1125 (Pa.Cmwlth.1998).

3. In *O'Connell,* our Supreme Court held that arresting officers have a duty to notify licensees that the constitutional rights provided by

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are inapplicable to a request to submit to chemical testing. *O'Connell,* 521 Pa. at 252, 555 A.2d at 878.

4. Form DL–26 provides, in pertinent part:

It is my duty as an officer to inform you of the following:
 1. You are under arrest for driving under the influence of alcohol or a con-

When Trooper Rossi requested that Lanthier submit to chemical testing, Lanthier did not respond. Trooper Rossi repeated the warnings immediately thereafter and requested for a second time that Lanthier submit to chemical testing. Again, Lanthier did not respond. Finally, once Lanthier was taken to the hospital, Trooper Rossi repeated the warnings and requested for a third time that Lanthier submit to chemical testing. Lanthier, again, provided no response. Trooper Rossi interpreted Lanthier's failure to respond as a refusal.

Lanthier entered into evidence photographs depicting her injuries five days after the date of the accident. Lanthier explained that she spent three days in the hospital "for an injury to [her] heart and a severe concussion and eye injury," and that the laceration on her forehead required 68 stitches. (R.R. at 28a.) Lanthier testified that she did not recall being with Trooper Rossi at the scene of the accident, in the ambulance, or at the hospital, and that she did not recall Trooper Rossi reading anything to her or requesting that she submit to chemical testing. It was Lanthier's position before the trial court that DOT failed to satisfy its initial burden of proof because DOT did not establish that Lanthier was conscious and listening at the time Trooper Rossi requested that she submit to chemical testing.

The trial court denied Lanthier's appeal, holding that DOT satisfied its initial burden through Trooper Rossi's testimony, which shifted the burden to Lanthier, who failed to establish that she was incapable of providing a knowing and conscious refusal. In so holding, the trial court implicitly rejected Lanthier's contention that DOT must establish as part of its initial burden of proof that the licensee was conscious and listening at the time that the request to submit to chemical testing was made. This appeal followed.

■ On appeal,[5] Lanthier contends that the trial court erred in concluding that Lanthier refused chemical testing within the meaning of Section 1547 of the Code because DOT failed to carry its burden of proof. Specifically, Lanthier argues that, "before the burden-shifting can take place, [DOT] must at least introduce evidence tending to prove that the arresting [officer] acted under the reasonable belief that the licensee was conscious and listening at the time the requests and warnings were issued." (Lanthier's Brief at 8.) Lanthier contends that DOT failed to establish that Lanthier heard and/or was capable of responding to Trooper Rossi's requests because Trooper Rossi's testimony failed to

trolled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of _____ (blood, breath or urine. Officer chooses the chemical test).

3. If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. . . .

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings *or you remain silent when asked to submit to chemical testing,* you will have refused the test, resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.

(Original Record, February 24, 2010 Hearing Transcript, DOT Ex. 1, at 4 (emphasis added).)

5. "This Court's standard of review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion." *Kollar,* 7 A.3d at 339 n. 1.

establish that Lanthier was communicative in any way with Trooper Rossi, attending medical personnel, or any other person at the time the requests were made, and because Trooper Rossi failed to ascertain Lanthier's medical condition from attending medical personnel before requesting that she submit to chemical testing.

■ We find it unnecessary to expand upon the list of items DOT must establish as part of its prima facie case under Section 1547 of the Code by requiring DOT to show that the law enforcement officer had some reasonable basis to believe that the licensee was *able* to hear and respond to the request for chemical testing and *O'Connell* warning. Instead, we believe that the officer's decision to make the request and to issue the warning is indicia enough of the officer's reasonable belief that the licensee was capable of hearing and responding to the request and the warning.

■ The purpose of seeking chemical testing is to ascertain whether a crime has been committed—*i.e.*, driving under the influence. *See Com. v. Riedel*, 539 Pa. 172, 181–82, 651 A.2d 135, 140 (1994) ("[T]he purpose underlying [implied consent] is to enable police to obtain evidence of intoxication or drug use to be utilized in criminal proceedings." (Quotations omitted, alterations in original.)). A refusal to submit to chemical testing hampers this effort, because it prevents the officer from conducting the chemical testing. *See Com. v. Eisenhart*, 531 Pa. 103, 106, 611 A.2d 681, 682 (1992) ("[O]nce the operator of a vehicle refuses to submit to a blood test, [Section 1547 of the Code] prohibits the testing of blood for alcohol level and the subsequent evidentiary use of such test results."). With this in mind, we can discern no reason why a law enforcement officer would elect to request permission to conduct chemical testing and issue an *O'Connell* warning to anyone who the officer reasonably believes is incapable of hearing and responding. Such a tack would only yield a refusal, by silence or otherwise, and impair the officer's investigation. This is particularly true where the licensee is obviously unconscious.[6]

Whether, then, a license was *actually* conscious and listening at the time a re-

---

6. Indeed, pursuant to Sections 1547(a) and 3755 of the Code, 75 Pa.C.S. § 3755, where a driver involved in a motor vehicle accident requires medical treatment in an emergency room, a police officer with probable cause to believe that the driver was under the influence of alcohol may request emergency room personnel to take blood samples from the driver for the purpose of testing the driver's BAC (blood alcohol content). *See Com. v. Shaw*, 564 Pa. 617, 621–24, 770 A.2d 295, 297–99 (2001); *Riedel*, 539 Pa. at 186–87, 651 A.2d at 142–43 (Zappala, J., concurring). Section 3755 of the Code provides, in pertinent part:

(a) General rule.—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of [S]ec-

tion 3802 (relating to driving under the influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. . . . Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

Such a test performed at the police officer's request is impermissible, however, if the officer already placed the driver under arrest for driving under the influence, issued the *O'Connell* warning and made the request to submit to chemical testing, and the driver refused to submit to chemical testing. *See Riedel*, 539 Pa. at 182–85, 651 A.2d at 140–42; *Eisenhart*, 531 Pa. at 107–09, 611 A.2d at 683.

quest was made goes to whether a licensee was capable of making a conscious and knowing refusal. Our established and long-standing framework under Section 1547 of the Code clearly places the burden of proving that a refusal was not conscious and knowing on the licensee. *Kollar*, 7 A.3d at 339–40. We see no reason to abandon that framework in this case, and we will proceed as if Lanthier had argued that the trial court erred in finding that Lanthier failed to satisfy her burden of proving that she was incapable of making a conscious and knowing refusal to submit to chemical testing.

As we stated above, whether a licensee is capable of making a conscious and knowing refusal is a factual determination to be made by the trial court. *Kollar*, 7 A.3d at 340. Such a determination must be affirmed on appeal if supported by competent evidence in the record. *Id.* Because Lanthier did not introduce any medical testimony in the proceedings below, the trial court's determination of whether Lanthier sustained her burden of showing that she was incapable of providing a conscious and knowing refusal was limited to whether the severity and incapacitating effect of Lanthier's injuries were obvious. *Ostermeyer*, 703 A.2d at 1077; *McQuaide*, 647 A.2d at 301–02.

 Here, the trial court credited Trooper Rossi's testimony regarding the nature and extent of his interaction with Lanthier at the scene of the accident in determining that the severity and incapacitating effect of Lanthier's injuries were not obvious. Trooper Rossi's credible testimony shows that Lanthier was conversant and responded to a series of questions in an appropriate manner merely minutes before being requested to submit to chemical testing. Based on this testimony, the trial court found as not credible Lanthier's testimony that she was incapable of responding to Trooper Rossi's requests, reasoning: "It is difficult to imagine that Lanthier was in fact able to provide to [Trooper] Rossi a detailed description of the accident one minute, and unable to understand or provide any response whatsoever to [Trooper] Rossi's request that she submit to testing the next." (Trial Court's 1925 Opinion, dated August 5, 2010, at 6.) "Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts." *O'Connell*, 521 Pa. at 248, 555 A.2d at 875. This Court holds, therefore, that there is sufficient evidence in the record to support the trial court's determination that Lanthier was not incapable of making a conscious and knowing refusal to submit to chemical testing.[7]

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this 31st day of May, 2011, the order of the Court of Common Pleas of Pike County, dated March 5, 2010, is hereby AFFIRMED.

7. Even if we assume, *arguendo*, that DOT is required as part of its initial burden to introduce evidence tending to prove that an arresting officer acted under a reasonable belief that a licensee was conscious and listening at the time a request to submit to chemical testing was made, the result does not change. Here, that Trooper Rossi acted under a reasonable belief that Lanthier was conscious and listening is supported by Trooper Rossi's testimony that he spoke with Lanthier merely minutes before requesting that she submit to chemical testing, that he requested that Lanthier submit to chemical testing three times (twice in the ambulance and once at the hospital), and that he interpreted Lanthier's failure to respond as a refusal.