# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Siamion Kremer, : 
                Appellant : 
: 
              v. : No. 518 C.D. 2015
: Submitted: November 25, 2015
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                 **FILED: February 3, 2016**


Appellant Siamion Kremer (Licensee) appeals from an order of the Court of Common Pleas of Bucks County (trial court). The trial court denied Licensee's statutory appeal of the one-year suspension of his operating privileges by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT). DOT issued a notice suspending Licensee's operating privileges under Section 1547(b)(1)(i) of the Vehicle Code (Code),[2] based upon his refusal to submit to chemical testing. We now affirm.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016 when Judge Leadbetter assumed the status of senior judge.

[2] 75 Pa. C.S. § 1547(b)(1)(i). Section 1547(b)(1)(i) of the Code provides that if any person who is arrested for driving under the influence of alcohol "is requested to submit to chemical testing and refuses to do so . . . [DOT] shall suspend the operating privilege of the
**(Footnote continued on next page…)**

On November 17, 2013, Lower Southampton Police Officer Joseph Zaffino arrested Licensee and charged him with driving under the influence of alcohol (DUI). On December 12, 2013, DOT sent a notice of suspension to Licensee, informing him that his driving privileges were suspended for a one-year period as a result of his refusal to submit to chemical testing following his DUI arrest. Licensee filed a statutory appeal of the suspension notice, and the trial court conducted a hearing on November 7, 2014.

During the hearing, DOT presented the testimony of Officer Zaffino. Officer Zaffino testified that he was on patrol when he observed a vehicle in front of him that was "slowing down and speeding up." (Reproduced Record (R.R.) at 11.5) Officer Zaffino continued to follow the vehicle, which began to swerve within its own lane. (*Id.*) Ultimately, the vehicle "swerved from the curb lane into the passing lane, and then came back from the passing lane all the way across the curb lane and drove up onto the curb." (*Id.*) The vehicle's tires were destroyed by the accident, and Officer Zaffino activated his lights and pulled over behind the vehicle. (*Id.* at 11.6.) Officer Zaffino approached the vehicle and could smell alcohol. (*Id.*) Licensee, the driver, had glassy eyes. (*Id.*) Officer Zaffino explained that while speaking with Licensee, he noticed that "there was a bit of a language barrier, but [Licensee] was able to answer the questions that I had." (*Id.*) Officer Zaffino asked Licensee to exit the vehicle and explained to Licensee that he wanted him to perform field sobriety tests. (*Id.*) Licensee's wife informed

---

**(continued…)**

person . . . for a period of 12 months." This provision is commonly known as the "Implied Consent Law."

Officer Zaffino that English was not Licensee's first language and that she would be able to translate the field sobriety tests for Licensee. (*Id.* at 11.7.) Officer Zaffino explained Licensee's wife appeared to "speak English better than [Licensee] did." (*Id.* 11.14.) After Officer Zaffino began to explain the first field sobriety test to Licensee's wife, Licensee said, "I understand English, you can just tell me." (*Id.* at 11.7.) Licensee ultimately failed the field sobriety tests, and Officer Zaffino administered a portable breath test, which demonstrated the presence of alcohol. (*Id.*)

After Licensee failed the tests, Officer Zaffino placed him under arrest for DUI. (*Id.*) In Officer Zaffino's vehicle, Officer Zaffino asked Licensee if he would "want to go to the hospital to give blood." (*Id.* at 11.8.) Licensee agreed to submit to the blood test, and Officer Zaffino transported him to St. Mary's Hospital. (*Id.*) At the hospital, Licensee was placed in a holding cell with a "language line."[3] (*Id.* at 11.8-11.9.) Officer Zaffino read the chemical test warning form (DL-26 form) in English, which Licensee was able to hear. (*Id.*) After Officer Zaffino read the DL-26 form, an interpreter translated the warnings into Russian via the language line. (*Id.* at 11.8.) Officer Zaffino explained that "[a]fter the translator read the DL-26 form verbatim, [Licensee] refused to give a blood sample." (*Id.*) Officer Zaffino could not recall exactly what Licensee said in refusing the test, but indicated that Licensee responded through the language line, and the interpreter responded to Officer Zaffino. (*Id.*) Officer Zaffino and Licensee both signed the DL-26 form. (*Id.* at 4.5, 11.11.)

---

[3] Officer Zaffino described a language line as "a neutral language interpreter line that is used by the hospital." (R.R. at 11.18.)

Licensee also testified at the hearing before the trial court. Licensee explained that during the arrest, Licensee's wife acted as an interpreter. (*Id.* at 11.20.) Licensee understood some of the words that Officer Zaffino was saying, and, with the help of his wife, Licensee understood that he was being investigated for DUI. (*Id.*) After his arrest, Officer Zaffino asked Licensee for a blood sample, and Licensee agreed to go to the hospital. (*Id.*) Licensee remembered using the language line after arriving at the hospital. (*Id.* at 11.21.) Licensee described the translation of the DL-26 form as "unprofessional" and "kind of not coherent." (*Id.*) He tried to ask the interpreter questions, because he did not understand what a "chemical test" was, but he could not understand the interpreter's explanation. (*Id.* at 11.22.) Licensee did not inform Officer Zaffino that he could not understand. (*Id.*)

The trial court issued an order on November 7, 2014, denying Licensee's appeal and reinstating the suspension of his operating privileges. (*Id.* at 5.1.) Licensee filed a notice of appeal, and the trial court issued an order directing Licensee to file a statement of errors complained of on appeal. Licensee filed the statement, and the trial court issued an opinion explaining its decision. In so doing, the trial court cited the testimony of Officer Zaffino. The trial court explained that Licensee was provided with an interpreter and that Licensee's testimony that he did not understand the interpreter was not credible, because Licensee failed to inform Officer Zaffino that he did not understand. The trial court also noted that Licensee's "refusal to submit to chemical testing is memorialized in the DL-26 . . . form signed by Officer Zaffino and Licensee." (Trial Ct. Op. at 3.)

4

On appeal to this Court,[4] Licensee first argues that substantial evidence does not support the trial court's finding that Licensee refused to submit to chemical testing. Alternatively, Licensee contends that, even if he did refuse chemical testing, his refusal was not knowing and conscious, and, therefore, his refusal is insufficient to sustain the suspension of his operating privileges.

We first address Licensee's argument that substantial evidence does not support the trial court's finding that Licensee refused to submit to chemical testing.[5] In order to suspend a licensee's driving privileges for refusing to submit to chemical testing, DOT must establish the existence of the following elements: (1) the police arrested the licensee based upon reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the police asked the licensee to submit to a chemical test; (3) the licensee refused to submit to testing; and (4) the police warned the licensee that refusing to submit to testing would result in license suspension. *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011). "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 19 (Pa. Cmwlth. 2010). It is well-established "that

---

[4] This Court's review of an order of a trial court denying a licensee's statutory appeal from a license suspension by DOT is limited to considering whether the trial court's factual findings are supported by competent evidence, and whether the trial court erred as a matter of law or demonstrated a manifest abuse of discretion. *McCloskey v. Dep't of Transp., Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa. Cmwlth.), *appeal denied*, 740 A.2d 235 (Pa. 1999).

[5] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 111, 116 (Pa. Cmwlth. 2000).

5

anything less than an unqualified, unequivocal assent constitutes a refusal." *Dep't of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996).

Licensee takes issue with the trial court's reliance on Officer Zaffino's testimony and argues that the officer's testimony was insufficient to prove that Licensee refused chemical testing. During the hearing before the trial court, Officer Zaffino testified:

> A. . . . After the translator read the DL-26 form verbatim, he refused to give a blood sample.
>
> Q. You said he refused. How did he refuse to give a sample?
>
> A. I don't remember exactly. He either said -- I would imagine him saying no or, you know, I asked, can you repeat it, and he would have said yes.
>
> Q. But he responded to you? . . .
>
> A. He responded through the language line and the language line responds to me.

(R.R. at 11.8.) Licensee contends that Officer Zaffino's testimony is equivocal and, therefore, does not constitute substantial evidence to support the finding that Licensee refused chemical testing.

Equivocal testimony is that which is vague and leaves doubt as to its meaning. *Chadwick v. Workmen's Comp. Appeal Bd. (Benjamin Franklin Hotel)*, 573 A.2d 652, 655-56 (Pa. Cmwlth.), *appeal denied*, 589 A.2d 694 (Pa. 1990). While Officer Zaffino's testimony as to what Licensee said exactly in refusing chemical testing may be equivocal, this does not affect the substance of Officer Zaffino's testimony—namely, that Licensee, through the interpreter, verbally refused to submit to chemical testing. Such testimony constitutes substantial evidence to support the trial court's finding that Licensee refused chemical testing, as it demonstrates that the Licensee did not offer unqualified,

6

unequivocal consent. Although Officer Zaffino's failure to recall the exact conversation that took place could have affected the weight to be given to his testimony, this Court does not reweigh evidence. *Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) ("Determinations as to . . . the weight assigned to the evidence are solely within the province of the factfinder."). Because Officer Zaffino's testimony was sufficient to support the finding that Licensee refused to submit to chemical testing, we reject Licensee's argument.

We next address Licensee's argument that his refusal to submit to chemical testing was not knowing and conscious. Specifically, Licensee contends that "[t]he interpreter was not available for cross examination [which] should have put a doubt in [the trial court]'s mind as to whether [Licensee]'s refusal was conscious and knowing." (Licensee Br. at 16.) Licensee maintains that because an interpreter's services were used, the interpreter should have been required to testify at the hearing before the trial court. In support of this contention, Licensee cites an unreported decision of this Court, *Godoy-Romero v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., No. 1173 C.D. 2012, filed Jan. 22, 2013).[6] In *Godoy-Romero*, a licensee was arrested and taken to a hospital for chemical testing. At the hospital, the licensee informed the arresting officer that he did not understand English, and the officer utilized the services of an interpreter to communicate the implied consent warnings to the licensee. After the warnings were translated to the licensee, the interpreter stated, "No blood work.

---

[6] Pursuant to Section 414 of the Commonwealth Court's Internal Operating Procedures, "[p]arties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent."

Just ticket." *Godoy-Romero*, slip op. at 1. DOT suspended the licensee's operating privileges based on the licensee's refusal to submit to chemical testing, and the licensee appealed to the common pleas court. The common pleas court sustained the licensee's appeal and found that the officer's testimony regarding the licensee's refusal was not credible, because the officer "based his determination of the refusal on statements made by the interpreter who was not available for cross-examination." *Id.*, slip op. at 2. DOT appealed to this Court, which affirmed the common pleas court's order. In so doing, we explained that the only evidence supporting the licensee's refusal—the officer's testimony—was determined by the common pleas court to be not credible. Because DOT failed to sustain its initial burden to show that the licensee refused chemical testing, the burden never shifted to the licensee to prove that his refusal was conscious and knowing.

The instant matter is distinguishable from *Godoy-Romero*. Here, the trial court found that Officer Zaffino's testimony was credible, despite the fact that the interpreter did not appear at the hearing before the trial court. *Godoy-Romero* does not stand for the proposition that when a police officer engages the services of an interpreter, the interpreter must appear at the hearing before the trial court.[7]

---

[7] We note that it is "not the officer's duty to enlist the assistance of an interpreter to make sure a motorist understands implied consent warnings." *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005); *see also Commonwealth v. Robinson*, 834 A.2d 1160, 1164 (Pa. Super. 2003) ("Requiring certified interpreters for every driver who may have difficulty understanding a police officer . . . due to a . . . language barrier . . . is not only not required by the [I]mplied [C]onsent [L]aw, it is simply not feasible, particularly in the case of DUI investigations where temporal concerns are paramount."), *appeal denied*, 849 A.2d 241 (Pa. 2004). Rather, "[a]n officer's sole duty is to *inform* motorists of the implied consent warnings; once they have done so, they have satisfied their obligation." *Martinovic*, 881 A.2d at 35 (emphasis in original).

8

Rather, the common pleas court in *Godoy-Romero* found the officer's testimony to be not credible due to the interpreter's absence, and that testimony was the only evidence supporting the licensee's refusal. As noted above, there was no such determination in the instant matter. Licensee essentially asks us to make our own determinations as to the credibility of the witnesses, which, under our standard of review, we are unable to do. "Determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). We, therefore, reject Licensee's argument that his refusal to submit to chemical testing was not knowing and conscious, because the interpreter did not testify at the hearing before the trial court.

To the extent that Licensee argues that he was unable to make a knowing and conscious refusal, because he did not understand the implied consent warnings or the meaning of "chemical test" due to the "unprofessional" interpretation, we reject Licensee's argument. The licensee bears the burden "to establish that []he was not capable of making a conscious and knowing refusal to submit to chemical testing." *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 348-49 (Pa. Cmwlth. 2011). "Whether a licensee satisfies the burden of showing an inability to make a knowing and conscious refusal of testing is a factual determination for the trial court to decide." *Gombar v. Dep't of Transp., Bureau of Driver Licensing*, 678 A.2d 843, 847 (Pa. Cmwlth. 1996). "Such a determination must be affirmed on appeal if supported by competent evidence in the record." *Lanthier*, 22 A.3d at 352.

Here, the trial court specifically determined that Licensee's testimony concerning his understanding of the warnings and translation was not credible,

because "Licensee also admitted that he made no attempt to communicate his alleged lack of understanding to the officer." (Trial Ct. Op. at 3.) As noted above, we will not reevaluate the trial court's credibility determinations on appeal. At the hearing before the trial court, Officer Zaffino testified that although Licensee seemingly did not speak English as well as his wife, Licensee was able to complete the field sobriety tests when Officer Zaffino explained them in English. (R.R. at 11.7, 11.14.) On the way to the hospital, Officer Zaffino asked Licensee in English if he would consent to a blood test, and Licensee consented to the test without the need for an interpreter. (*Id.* at 11.7-11.8, 11.15-11.16.) Licensee heard the implied consent warnings in English, and the interpreter also translated the warnings for Licensee. (*Id.* at 11.8.) Licensee did not attempt to inform Officer Zaffino that he did not understand the warnings or the chemical test. (*Id.* at 11.22.) This testimony constitutes substantial evidence to support the trial court's determination that Licensee was capable of making a knowing and conscious refusal. We, therefore, reject Licensee's argument that he was unable to make a knowing and conscious refusal, because he did not understand the implied consent warnings and chemical test.

Accordingly, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Siamion Kremer,                          :
                     Appellant           :
                                         :
          v.                             :    No. 518 C.D. 2015
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing               :

# **O R D E R**

AND NOW, this 3rd day of February, 2016, the order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge