IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn C. Kane                  :

                                 :

          v.                : No. 1849 C.D. 2019

                                 : Submitted: May 1, 2020

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing,      :

                                 :

                 Appellant   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                   FILED: October 16, 2020


The Department of Transportation, Bureau of Driver Licensing (DOT) appeals the order of the Dauphin County Court of Common Pleas (trial court) sustaining the appeal of Shawn C. Kane (Licensee) and rescinding DOT's one-year suspension of his operating privilege pursuant to Section 1547(b)(1)(i) of the Vehicle Code.[1]  We affirm.

On November 16, 2018, DOT sent Licensee an Official Notice of the Suspension of his driving privilege as a result of his violation of Section 1547 of the Vehicle Code, based on his refusal to submit to chemical testing.  Reproduced

---

[1] 75 Pa. C.S. §1547(b)(1)(i).  Section 1547(b)(1)(i) states, in pertinent part, "If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person . . . for a period of 12 months."

Record (R.R.) at 61a-64a. On December 13, 2018, Licensee appealed the one-year license suspension to the trial court. *Id.* at 1a-10a.

The evidence presented at the February 28, 2019 trial court hearing may be summarized as follows.[2] Lower Paxton Township (Township) Police Officer Matthew Bartow (Officer) testified that on November 3, 2018, he received a call from a concerned citizen that there had been a single-vehicle accident on Dowhower Road in the Township. Officer traveled to the scene, but no vehicle was present. Officer spoke again with the concerned citizen, who described the motorist and his motorcycle and stated that the motorist had been lying on the ground with some blood, a glove, and some motorcycle parts. The concerned citizen stated that the motorist then drove southbound from the accident scene when the concerned citizen went to call an ambulance. R.R. at 78a.

Less than ten minutes later, Officer received a call that a motorcycle matching the concerned citizen's description was located on Gallon Street, approximately two blocks away from the accident scene. Officer went to Gallon Street and saw a motorist, ultimately identified as Licensee, lying on the ground next to a motorcycle matching the description and license plate number previously given to officers. Officer saw that Licensee was bleeding from the back of the head and applied gauze to help control the bleeding. Officer noticed an extreme odor of alcohol when applying the gauze. Officer asked Licensee what had happened, and Licensee stated that he fell. Officer asked about his alcohol

---

[2] *See Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420, 423 (Pa. Cmwlth. 1998) ("As fact finder, the trial court is required to evaluate the witnesses, their demeanor and make necessary credibility determinations. The trial court may accept or reject the testimony of any witness in whole or in part. These credibility determinations cannot be disturbed on appeal.") (citations omitted).

consumption, and Licensee initially replied that he had not consumed any alcohol, but on further inquiry admitted that he drank two beers at a friend's house. Although Licensee had slurred speech and uncommonly watery eyes, he provided sensible responses to Officer's questions and requested a lawyer several times. R.R. at 78a-79a.

Officer stated that Licensee struggled to stand up and was subsequently placed on a stretcher and transported to Penn State Hershey Medical Center (HMC). Upon his arrival at HMC, Licensee underwent an initial evaluation, had blood drawn for medical treatment purposes, and had x-rays taken. Twenty to thirty minutes after Licensee's arrival, Officer approached Licensee, who was lying on a stretcher, and explained that Officer was going to read DOT's Form DL-26B (Form) regarding a request for chemical testing of the blood and the consequences for refusal. Officer first read the Form to Licensee verbatim, and Licensee indicated that he heard Officer's reading of the Form. Immediately thereafter, Officer explained the Form's contents to Licensee in generic terms, and Licensee indicated that he understood that explanation as well. Officer then asked Licensee to submit to chemical testing of his blood, but Licensee refused. Licensee signed the Form, demonstrating that he was apprised of the warnings contained therein, and Officer left HMC. R.R. at 79a-80a.

Licensee's wife, Kathryn Kane (Wife), testified that on November 3, 2018, she received a call from a pastor who informed her that her husband was in HMC's trauma unit. Wife arrived at HMC and found Licensee on a stretcher in an emergency hall area. Licensee was wearing a neck brace and had multiple cuts and lacerations on his hands, legs, and face, and his body and pillow were covered in

3

blood. Wife attempted to converse with Licensee and ask him questions, but he merely rambled in response. R.R. at 80a.

Wife stated that Licensee was ultimately admitted to a hospital room for observation due to brain trauma. Wife spoke with Licensee in the room and he said some alarming things, such as repeatedly asking Wife about whether she had informed his father regarding what had happened. Wife found the questions alarming because Licensee's father had been dead for eight years. R.R. at 80a-81a.

Licensee testified that on November 3, 2018, he was traveling on Dowhower Road when a vehicle traveling in the opposite direction crossed over the center line into his lane of travel. He recalled swerving to avoid the oncoming vehicle into some wet leaves and losing control of his motorcycle. Licensee's last memory of the accident is the sound of his head hitting the pavement. He did not remember getting back onto his motorcycle and driving from Dowhower Road to Gallon Street. He did not recall being in the emergency room at HMC, and did not recall speaking to Officer at HMC or at any other time that night. Therefore, Licensee did not recall Officer telling him that he would lose his license if he refused to consent to a chemical test of his blood, and he did not recall the Form being read to him. When shown the Form at the trial court hearing, Licensee did not recall seeing it on the night in question. When shown his signature on the Form, he stated that the signature does not resemble his normal signature. Licensee also did not recall asking for his father while at HMC. R.R. at 81a.

Medical records admitted by the trial court confirmed that Licensee sustained multiple traumatic injuries including a severe traumatic brain injury; a fracture of the left ankle bone; and two brain hemorrhages, one in the front of his

head and one in the back. R.R. at 75a-76a. Licensee spent four days in HMC's trauma unit. *Id.*

At the conclusion of the hearing, based on the testimony of his witnesses and the HMC medical records, Licensee argued that his refusal to submit to chemical testing was not knowing and conscious based on his obvious traumatic brain injuries. R.R. at 53a-56a. In contrast, DOT argued that Licensee's suspension should be upheld based on Officer's testimony, the Form, and Licensee's failure to present medical evidence that the brain injuries alone rendered him incapable of a knowing and conscious refusal to submit to chemical testing. *Id.* at 56a-57a.

On December 5, 2019, the trial court issued a Memorandum Opinion and Order sustaining Licensee's appeal and rescinding DOT's one-year suspension of his operating privilege. R.R. at 77a-93a. The trial court initially rejected Licensee's claims that he was not under arrest when Officer asked him to submit to chemical testing of his blood. *See id.* at 83a-86a.

The trial court next considered Licensee's claim that he did not knowingly refuse Officer's request to submit to chemical testing of his blood due to the head injury that he sustained in the accident prior to the request. R.R. at 86a-90a. Relying on *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 596 A.2d 1217 (Pa. Cmwlth. 1991), and *Department of Transportation, Bureau of Traffic Safety v. Day*, 500 A.2d 214 (Pa. Cmwlth. 1985), the trial court determined that Licensee's injuries were so severe and obviously incapacitating that medical evidence, in addition to the HMC medical records that were already admitted, was not necessary for Licensee to sustain his burden of demonstrating that he was unable to make a knowing and conscious refusal to submit to chemical

5

testing of his blood. *See* R.R. at 88a-90a. Specifically, the trial court explained that "[a]lthough there was no expert medical testimony, the uncontroverted evidence presented at the Hearing, including [Licensee's] medical records from HMC, established that the injuries sustained by [him] consisted of multiple severe head injuries, which were far from trivial or unspecified." *Id.* at 89a. The court noted that "[Licensee] sustained a severe traumatic brain injury and two hemorrhages of the brain as a result of his motorcycle accident," and that the "injuries were so severe that they necessitated a four (4)-day in-patient stay in the trauma unit of HMC[.]" *Id.* at 89a-90a (footnote omitted). The court continued, "[Licensee's] mental state following the accident was so disrupted that he did not recall any of the events that occurred in the hours after his head hit the pavement, and, moreover, he was under the illusion that his father, who had been dead for eight (8) years, was still alive." *Id.* at 90a.

> Accordingly, the trial court held:
>
> [T]he facts and circumstances presented in the instant matter establish that [Licensee's] injuries were severe, incapacitating, and obvious such that expert medical testimony was unnecessary to validate his inability to make a knowing and conscious refusal, and we find that his ([Licensee's]) articulated refusal was **NOT** knowing and conscious.

R.R. at 92a (emphasis in original).

The trial court also determined that "the very evidence that was being sought by [] Officer, a [blood alcohol content (BAC)] reading obtained from a blood sample, was already obtained [by HMC] and available to [] Officer, without subjecting [Licensee] to another invasive procedure to obtain another sample[.]" R.R. at 90a-91a. As a result, the trial court stated:

6

> We further find that the blood sample sought by [Officer] had already been obtained and the BAC results of same were readily obtainable for subsequent prosecution purposes, through the acquisition and service of a valid search warrant (as was obviously done in this case) upon the medical records official at HMC. There was absolutely no exigent circumstances in this case which would justify law enforcement insisting on a second invasive procedure to obtain another blood sample at the HMC.

*Id.* at 92a.

Based on the foregoing the trial court issued an order sustaining Licensee's appeal and rescinding DOT's license suspension. R.R. at 93a. DOT then filed the instant appeal of the trial court's order.[3]

As this Court has stated:

> Before a license suspension in accordance with 75 Pa. C.S. §1547 will be sustained, [DOT] must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test of intoxication; (3) refused to submit to such test; and (4) was specifically warned that a refusal would result in the revocation of his driver's license. . . .

> Once [DOT] has met its burden of establishing the above four factors, it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the test. Moreover, a driver's self-serving testimony that he was incapable of providing a knowing and conscious consent to or refusal of a chemical test is not sufficient to meet his burden of proof, and expert medical testimony, although not a *per se*

---

[3] "When appellate courts review the decision of a [trial court] in a license suspension case, the scope of review is limited to determining whether the findings of facts of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989) (citation omitted).

requirement, is generally required in order to validate his testimony. However, an expert medical opinion to validate a driver's alleged inability to make a knowing and conscious refusal (or agreement) to submit to a chemical test will *not* be required when *severe, incapacitating* injuries are *obvious*.

*Ostermeyer v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1075, 1077 (Pa. Cmwlth. 1997) (citations omitted and emphasis in original). *See also Groscost*, 596 A.2d at 1220 (holding that the hospital records showing a five-day stay, and an officer's description of the licensee's injuries of a deep facial laceration two and one-half to three inches long caused by contact with the steering column, and description that the vehicle's steering column was pushed forward, bent and covered with blood from the accident, obviated the need for expert medical testimony); *Day*, 500 A.2d at 215 (holding that a broken jaw, severe facial lacerations, a broken arm, an injured leg, and blows to the back of the head were sufficiently obvious and severe so that expert medical testimony was not required).

In this appeal,[4] DOT does not argue that the trial court erred in relying on the foregoing case law in sustaining Licensee's appeal. Indeed, DOT states:

> [C]iting decisions such as [*Day*] and [*Groscost*], the trial court held that [Licensee] did not need to offer any expert medical testimony because, in the trial court's opinion, [Licensee's] evidence shows that he suffered severe, incapacitating injuries that were obvious.
>
> [DOT] agrees that this is exactly what these decisions allow a trial court to do. However, [DOT] respectfully submits that in light of the guidance provided to lower courts by the Supreme Court in [*Barbour v. Department of Transportation, Bureau of Driver Licensing*, 732 A.2d 1157 (Pa. 1999)], it is well

---

[4] We reorder DOT's claims on appeal for the sake of clarity.

past time for this Court, sitting *en banc*, to overrule all of these no longer legally supportable decisions.

Brief for Appellant at 25-26.

However, DOT did not argue in the trial court that *Barbour* overruled *Day* and *Groscost sub silentio* or that the foregoing case law is no longer binding precedent, and did not raise this claim in its Pa. R.A.P. 1925(b) Statement of Errors Complained of on Appeal. *See* R.R. at 56a-57a, 112a-117a; Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) ("[T]o preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a [Statement] pursuant to Pa. R.A.P. 1925(b). Any issues not raised in a Pa. R.A.P. 1925(b) [S]tatement will be deemed waived."); *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997) ("[Pa. R.A.P.] 302(a) clearly states that issues not raised in the trial court are waived and cannot be raised for the first time on appeal. Pennsylvania courts have consistently applied this rule. *Commonwealth v. Piper*, [328 A.2d 845, 846-47 (Pa. 1974)].") (footnote omitted). As a result, DOT's claim in this regard has been waived and will not be addressed for the first time in this appeal.

Finally, DOT claims that the trial court erred in its alternative holding that Officer should not have insisted that Licensee submit to a second chemical test of his blood after HMC had already obtained a blood sample for diagnostic purposes. *See* Brief for Appellant at 14-15 ("In its opinion the trial court held that *one of the reasons* the court sustained [Licensee's] appeal was because [Officer] should not have requested that [Licensee] submit to a blood test under the [Vehicle Code] after the officer learned that blood already had been drawn by [HMC] for medical purposes.") (emphasis added).

9

However, as DOT indicates, this was another basis upon which the trial court sustained Licensee's appeal. The trial court's holding in this regard in no way affects its separate holding that Licensee was not capable of making a knowing and conscious refusal to submit to chemical testing of his blood. As a result, even if it is assumed that DOT is correct, the trial court's order sustaining Licensee's appeal and rescinding his license suspension under Section 1547(b)(1) of the Vehicle Code will not be disturbed because it is proper under *Day* and *Groscost*. *See, e.g.*, *Pennsy Supply, Inc. v. Zoning Hearing Board of Dorrance Township*, 987 A.2d 1243, 1251 (Pa. Cmwlth. 2009) ("[T]he trial court's reference to [a case stating the incorrect burden of proof] in its original opinion was harmless error since the trial court affirmed the [board's] decision that applied the appropriate burden of proof, and the error had no effect on the outcome of this case."); *Campbell v. Department of Environmental Resources*, 396 A.2d 870 (Pa. Cmwlth. 1979) ("It is axiomatic that we will not disturb a judgment, order, or decree on appeal for harmless error. *Paley v. Trautman*, [177 A. 819, 820 (Pa. 1935).]").

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn C. Kane             :
                               :
         v.            : No. 1849 C.D. 2019
                               :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                               :
            Appellant  :

# **O R D E R**

AND NOW, this 16th day of October, 2020, the order of the Dauphin County Court of Common Pleas dated December 5, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge